Hillsborough,　}
　Dec., 1895. 　}

## HASKELL v. AFRICA.

It is no defence to an action by an indorsee without recourse against the maker of a negotiable note, in which a deposit of collateral is recited, that stock delivered to the payee in exchange for the original collateral at a date subsequent to the indorsement, and never held by the plaintiff, was not returned or tendered to the defendant.

ASSUMPSIT, upon the two $1,000 notes hereinafter mentioned. Writ dated, April 18, 1892. Facts found by the court. November 5, 1885, the defendant gave James S. Pierson three notes,

two for $1,000 each and the other for $2,000, all made and dated
at Huntingdon, Pa., payable to Pierson or order on or before
May 1, 1887, with interest semi-annually from November 1.
Each note contained the following: "Along with this obligation
and two others of the same date which aggregate three thousand
dollars, I have delivered certificate No. 75 for 176 shares of stock
in the Huntingdon Gas Company, issued the 21st day of August,
1884, accompanied with a letter of attorney for the transfer of
the same, as collateral security for the payment of said obliga-
tions. And in default of payment of said obligations, I hereby
authorize the holder thereof, after ten days' notice to me, to sell
said stock either at public or private sale, and apply the proceeds
toward the payment of the above-mentioned notes." The cer-
tificate for the stock was delivered to Pierson with the notes.
Prior to April 22, 1887, Pierson indorsed the two $1,000 notes with-
out recourse and sold them to Walter E. Lawton, or placed them
in his possession and suffered him to treat them as his property.
Between April 22 and June 8, 1887, Lawton transferred them to
his brother Joseph in part payment of an indebtedness. In
March, 1891, Joseph indorsed and delivered them to the plaintiff
for collection. The collateral was not delivered to Walter or the
subsequent holders of the notes.

June 8, 1887, the defendant paid the $2,000 note to Pierson
and took it up, and exchanged with him 81 shares of the Hunt-
ingdon Gas Company stock for the 176 shares previously held.
Pierson signed the following receipt and agreement, written upon
the back of the note: "June 8th, 1887, received from Walter
G. Africa two thousand dollars in full of the principal of the
within note and $12.33 interest thereon to this date. I have also
surrendered the stock mentioned therein and received as collat-
eral security for the remaining two notes of $1,000 each, two cer-
tificates of stock in the Huntingdon Gas Company, one, No. 5,
dated October 5th, 1857, for 5 shares, and one, No. 85, dated 3rd
day of January, 1885, for 76 shares, also a letter of attorney
from J. Simpson Africa in whose name said stock was issued,
authorizing the transfer of the same. Said stock and letter of
attorney to be delivered to said Walter G. Africa or his assigns
on the payment of the notes mentioned."

Walter E. Lawton, Joseph Lawton, or the plaintiff never au-
thorized or ratified this exchange of stock, nor had the certificates
for the eighty-one shares in his possession; and neither knew of the
exchange until after this action was begun. The plaintiff was
informed by the defendant, in March, 1891, that the certificate
for the 176 shares and the accompanying letter of attorney had
been returned to him. Pierson testified that he had never trans-
ferred the stock, and did not know what had become of the cer-
tificates. The stock still stands in the name of J. Simpson

Africa upon the books of the corporation, and he has received the dividends that have been declared upon it. The defendant's only defence was that the certificates of stock and letter of attorney have not been returned or tendered to him by the plaintiff.

*Burnham, Brown & Warren*, for the plaintiff.

*James F. Briggs* and *Oliver E. Branch*, for the defendant.

Chase, J. The question whether the defence made would be valid if the plaintiff or the party whom he represents, having possession of the collateral, had lost it through his own negligence, or for any reason was not ready to return it simultaneously with the payment of the notes (*Stuart* v. *Bigler's Assignees*, 98 Pa. St. 80; *Ocean National Bank* v. *Fant*, 50 N. Y. 474; *Cass* v. *Higenbotam*, 100 N. Y. 248; *Whitcher* v. *Dexter*, 61 N. H. 91; *Johnson* v. *Creamery Association*, *post*, p. 437), has not been considered, for it does not arise upon the facts presented. The 176 shares of stock were returned to the defendant prior to the commencement of the action, and no damage is, or can justly be, claimed by the defendant on account of any act or omission of the plaintiff in respect to that stock. When the eighty-one shares were placed in Pierson's possession by the defendant, Joseph Lawton, the plaintiff in interest, was the absolute owner of the two $1,000 notes, and had possession of them. As Pierson indorsed the notes without recourse, he was not liable upon them; and he had no authority from Lawton to act for him in regard to them or the collateral. Lawton never had the certificates of stock in his possession, nor ratified Pierson's acts in any way. The defendant knew, or by the exercise of reasonable care would have learned, that Pierson had disposed of the notes. In substance and effect, he appointed Pierson trustee to hold the stock for the benefit of the owner of the notes until they were paid, if the owner saw fit to ratify his acts, and for his own benefit after the lien was terminated. The plaintiff was no more responsible for the stock than he would have been for payments of money made by the defendant to Pierson on account of the notes. If there was negligence in the care of the certificates of stock and the accompanying letter of attorney, it was not the negligence of the plaintiff, and is not ground for delaying payment of his notes or for an offset against the amount due upon them. *Bank of the United States* v. *Peabody*, 20 Pa. St. 454.

*Judgment for the plaintiff.*

All concurred.