CLARENCE B. BROWN v. KATHRYN BRIGGS BROWN.

(*October* 12, 1942.)

RODNEY and SPEAKMAN, J. J., sitting.

*H. Eugene Savery* for the plaintiff.

*James R. Morford* for the defendant.

Superior Court for New Castle County, No. 155, September Term, 1941.

Rodney, J., delivering the opinion of the Court:

The term "alimony" is a word with a dual meaning. In its broadest sense it means the support or maintenance which a Court decrees in favor of a spouse (usually the wife) as enforcing the right to marital support which such party may have had. In a more strict and limited sense it indicates such support or maintenance as is considered in connection with. divorce proceedings. The confusion in the meaning of the term is not hard to trace. At Common Law no English law Court (as distinguished from Ecclesiastical

Court) had any jurisdiction of divorce. Until the Matrimonial Causes Act of 1857 (20 & 21 Vict. C85) the Ecclesiastical Courts exercised sole judicial jurisdiction over matrimonial causes. Those Ecclesiastical Courts, while decreeing annulment of marriage in certain cases, did not grant absolute divorces from the bonds of matrimony, but solely decrees "a mensa et thora," constituting merely a legal separation. The marriage ties themselves, when legally made, were considered as indissoluble by the Ecclesiastical Courts. Only the rich and powerful could obtain absolute divorces by Act of Parliament. It is said (10 Halsbury Laws of England p. 631) that between 1700 and 1857 some 230 such Acts were passed. In connection with the legal separation or limited divorces the Ecclesiastical Courts granted alimony, both pendente lite and of a permanent nature.

It will thus be seen that the word "alimony" was used in connection with the support given to a wife while legally living apart from her husband, and yet while the bonds of matrimony still bound both. It was given when the Common Law liability of marital support was enforced by judicial decree. From this the use of the term "alimony" naturally drifted into two channels, (a) where maintenance or sustenance was given to a legally blameless wife separated from her husband, though divorce proceedings were not necessarily involved, and (b) where maintenance and sustenance were given as a result of a change or cessation of matrimonial obligations.

It is under (a) that may be found that long line of cases upholding the inherent jurisdiction of a Court of Equity to decree alimony unconnected with divorce proceedings. This, we think, might more properly be called "sustenance," "maintenance" or "support." These cases may be found in 30 C. J. 1078; 27 Am. Jur. 9; Ann. Cas. 1913D, 1134; *Mathvin v. Mathvin,* 15 Ga. 97, 60 Am. Dec. 664; 2 Va. Law Rev. 134.

It is unnecessary to consider what effect upon this jurisdiction may be caused by the more modern statutes of desertion and non-support. Our own Court, in *Addicks v. Addicks*, 1 *Marv.* (15 *Del.*) 338, 41 A. 78, recognized the affinity of the non-support statute and the divorce law when they felt bound, in an application for alimony pendente lite in a divorce case, by the maximum statutory liability for support as expressed in the non-support law.

It is with the alimony under (b), as connected with divorce proceedings, that we are here concerned.

Upon our separation from Great Britain we had no statute bearing upon divorce. The Legislatures of the Colonies assumed to themselves the power exercised by the English Parliament and legislative divorces became the rule. Before the Revolution divorces were granted by the Legislature in Pennsylvania (Minutes of Provincial Council, Vol. 9, p. 564-580), and in Delaware as early as 1789 (2 Del. Laws, 944). From 1789, and until prohibited by the Constitution of 1897, divorces were granted at almost every session of the Delaware Legislature, and amounted to approximately 500 in number. These legislative divorces continued with increasing frequency, notwithstanding our first divorce Act of February 3, 1832 (Laws of Delaware, Vol. 8, Chap. 144), gave to the Superior Court "sole cognizance of granting divorces." See *Townsend v. Griffin*, 4 *Harr.* (4 *Del.*) 440. The jurisdiction of a legislature over divorce has been said to be based upon its authority to determine the "status" of its citizens, and it has been held that the Legislature had no power to grant alimony, for such grant was in the nature of a judicial judgment. *Crane v. Meginnis*, 1 Gill & J. (Md.) 463, 19 Am. Dec. 237. The legislation found in 9 Del. Laws 318, 319, however, purported to grant divorces and also to dispose of the property of parties to the marriage.

The great weight of authority sustains the view that there is no Common Law jurisdiction as to divorce. The

Ecclesiastical Courts never existed here, and their adjudication did not form any portion of the Common Law. In the early case of *Jeans v. Jeans,* in 1835, 2 *Harr.* (2 *Del.*) 38, it was conceded that divorce jurisdiction emanated solely from the Act of Assembly, and not from the Common Law. It was contended, however, that the leading principles developed by the Ecclesiastical Courts should be considered as "great lights and sound guides" in the administration of the law of divorce. Of such opinion was the Court, and this is the prevailing rule in this country. See also *D. v. D.,* 2 *Terry* (41 *Del.*) 263, 20 A. 2d 139.

The first Delaware Divorce Act of February 3, 1832 (Vol. 8, Ch. 144), insofar as concerned the question of alimony, was:

"that the said Court shall have power to grant alimony to the wife for her sustenance during the pendency of a petition, filed for any of the causes aforesaid; * * *"

The above Act authorized the Court to grant alimony during the pendency of "a" petition for divorce, and the grant of alimony was not limited to the case where the petition for divorce is filed by the wife.

In 1852 the Act was changed. By Sec. 5 of Chap. 75, Revised Code of 1852 (page 239) the statute was made to read

"The Court may grant alimony to the wife for her sustenance pending her petition for divorce * * *"

By this statute the jurisdiction of the Court would seem to have been limited to those cases where the petition for divorce has been filed by the wife.

Such was the construction in other jurisdictions where a similar statute existed. An early statute of Missouri gave authority to the Court to "order any reasonable sum to be

paid for the support of the wife during the pendency of her application for a divorce." Rev. St. 1855, c. 55, § 8.

The Court in *Morton v. Morton,* 33 Mo. 614, held that there was no authority to grant alimony pendente lite when the divorce action had been instituted by the husband. A similar result was reached in *Reeves v. Reeves,* 82 N. C. 348. In both cases legislation corrected the palpable injustice of the law.

Some jurisdictions have held that in making an allowance of alimony pendente lite, it is in the discretion of the Court to include a reasonable sum for counsel fees. (See cases collected in 55 Cent. L. J. 386).

It is unnecessary to consider these cases, for in 1859, by Chapter 638, Vol. 11, Laws of Delaware, there was expressly authorized what some jurisdictions call "suit money" and other "expenses." By the cited amendment the statute was made to read:

"The Court may grant alimony to the wife for her sustenance pending her petition for divorce and may order and direct the husband to pay such sum as may be necessary in conducting her case. * * *"

An important observation should be made as to this Amendment. If, as we suppose, under the original statute alimony could only be granted where the wife was the petitioner, then it would seem that this must be the construction of the amendment, and expenses allowable under it could only be granted when alimony could be granted, viz., when the wife was the petitioner. The importance of this observation will be apparent when we consider the next amendment.

In 1873, by Chapter 548, Vol. 14, the Legislature added to the section the words "Whether the application be on the

part of either the wife or husband," so as to make the section read:

"The Court may grant alimony to the wife for her sustenance pending her petition for divorce and may order and direct the husband to pay such sum as may be necessary in conducting her case whether the application be on the part of either the wife or husband."

In this form the statute has remained to the present time.

The question is whether the words "whether the application be on the part of either the wife or husband" refer solely to the expenses authorized by the words immediately preceding, or whether they relate back and apply also to the alimony pendente lite there provided for. It is here material to refer again to the observation that when the last amendment was made the situation was that either sustenance or expenses could be allowed only when the divorce petition had been filed by the wife.

There is an aid to statutory construction by which relative or qualifying words, phrases or clauses are ordinarily to be applied solely to the words or phrases immediately preceding. This is sometimes called the doctrine of the "last antecedent." It has its roots far back in the law and is based upon the legal maxim "ad proximum antecedens fiat relatis, nisi impediatur sententia." There are many authorities in which the principle has been applied, and it has a sure place as an aid to statutory construction. See cases collected in 59 C. J. 985; 25 R. C. L. 965. The rule, however, is not an arbitrary one, or applicable to all cases.

In *Lewis' Sutherland Statutory Construction,* Vol. 2, Sec. 420, it is said:

"This principle [last antecedent] is of no great force. It only operated when there is nothing in the statute indi-

cating that the relative word or qualifying provision is intended to have a different effect. A very slight indication of legislative purpose or a parity of reason or the natural and common sense reading of the statute may overturn it and give it a more comprehensive application."

It was said by Lord Bramwell in *Great Western Ry. v. Swinden &c. Ry.*, L. R. 9 App. Cas. 787, 808, that

"as a matter of ordinary construction where several words are followed by a general expression which is as much applicable to the first and other words as to the last that expression is not limited to the last but applied to all."

This was approved in *United States v. Standard Brewery*, 251 U. S. 210, at page 218, 40 S. Ct. 139, 64 L. Ed. 229; *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U. S. 345, 40 S. Ct. 516, 64 L. Ed. 944; *Chicago & N. W. Ry. v. Booten*, (8 Cir.) 57 F. 2d 786, 799; *In re Graves' Estate* (D. C.) 27 F. Supp. 717, 719.

■ ■ Of course our only object is to ascertain, if possible, the intent of the law. All rules are made to that end alone. There is nothing in the statute to indicate whether the added words were intended to refer solely to the last antecedent or as well to the prior clause. We are thus driven back to what has been called the "common sense" meaning, bearing in mind the mischiefs to be remedied and the benefits to be secured by the new law. *State v. City of St. Louis*, 174 Mo. 125, 73 S. W. 623, 629, 61 A. L. R. 593. We are thus to call into play what Sutherland, supra, calls "parity of reason" and according to the familiar maxim "the reason of the law is the life (or soul) of the Law."

■ At the time the Act was passed not only was the husband the main source of support and the custodian of the financial resources of the family, but the husband was invested with all the independent resources of the wife. It was upon this basis that alimony pendente lite, in England,

was a matter of right; while in America, under the changed conditions resulting from the Married Women's Acts, it is a matter in the sound discretion of the Court.

What the Legislature evidently intended was that when a divorce was impending a wife should be in a position to adequately present her side of the controversy. If counsel fees and expenses were authorized to be ordered for the wife, regardless of the person by whom the suit was instituted, then by a parity of reason the necessary sustenance and very existence of the wife seems equally within the reason of the law.

To us it seems, and to the Legislature it must have seemed, that a wife in need and want, and who may be legally blameless, is just as much entitled to support when haled into Court on a charge that may be groundless, as when she, herself, institutes the action. Indeed it would seem that the scales should tip in her favor. A legally blameless wife who patiently endures her wrongs, hoping that the circumstances may change, and only comes into Court to defend herself, is, perhaps, to be preferred to one who seeks the first opportunity to seek legal redress for her grievances. Innocence and need would seem to be the only valid requisites for maintenance pendente lite, and, indeed, in the more modern view, innocence itself is not necessarily a requisite. It has come to be realized that while the marital contract remains undisturbed, the primary duty of support rests upon the husband, and not upon the public, and that a guilty wife may be just as hungry or as much in need, and equally liable to become a public charge as one who is without fault. Divorce is no longer an Ecclesiastical judgment for a spiritual offense or sin, but a necessity for the correction of social maladjustment.

The foregoing may have been the construction formerly placed upon the statute. In 1904, in *Harmon v. Harmon*, 5 *Penn.* (21 *Del.*) 152, 58 A. 1042, alimony pendente lite

was awarded to a wife where the suit was brought by the husband. Neither the question here considered nor the language of the statute was discussed by the Court.

We hold that in a proper case, according to the need of the wife and the ability of the husband, alimony pendente lite may be awarded whether the action be brought by the wife or husband. Of course, alimony pendente lite operates solely in personam. It was upon this basis that the Court in *Holland v. Holland,* 4 *Houst.* (9 *Del.*) 86, refused to order alimony before the defendant was in Court.

Whether the petition for divorce be filed by the husband or by the wife, and the petition be dismissed and divorce refused, then any temporary alimony ceases, for there is then no further case upon which the Court could rest its jurisdiction. If a decree nisi be entered in either case, then the continuance of the alimony pendente lite would rest in the sound discretion of the Court, and depend upon the circumstances of the case, because even after the decree nisi and until final decree the case is still before the Court, and some marital duty to support still exists.

In the present case the hearing on the petition for alimony pendente lite has been delayed and the wife has subsisted by her own efforts, though perhaps inadequately. We make no separate allowance for alimony pendente lite, but consider such facts in connection with a petition for division of property, now to be considered.

2. Application is also made by the wife for a statutory allowance or division of property. The pertinent provisions of the statute are set out in the statement of facts. The decree nisi has been granted on the petition of the husband.

It has appeared by the testimony that the husband owns in his own name one house in the City of Wilmington, having an assessed value of $6500, and subject to a mortgage of $3600. The divorce having been granted for

the aggression of the wife, no part of the husband's real estate is subject to the division, but its value may be considered in determining the husband's net worth, and thus in determining what portion of his personal estate, if any, might seem reasonable to allow to the wife.

From the testimony it appears that four properties in the City of Wilmington are owned by Brown & Kershaw, Incorporated, a corporation of the State of Delaware. It also appears that the husband, Clarence B. Brown, now owns, either by original holding or by subsequent purchase, all of the capital stock of Brown & Kershaw, Incorporated. The four properties have a proven assessed value of $12,000, and are subject to a blanket mortgage of $6400. The husband then has an equity in the property to which he individually holds title of approximately $3000 above the assessed value and owns all the stock of a corporation which has an equity in four properties of $5600 over the assessed value. The husband is a plumber with little present earning power, and receives a pension. The wife works for $9 per week, and has no other resources. There is testimony that the actual values of the properties may be less than the assessed values.

It is contended by the husband that stock in a wholly owned corporation, the only asset of which is realty, should be considered as realty. In *Community Stores v. Dean*, 1 *Terry* (40 *Del.*) 566, 14 A. 2d 633, we considered certain rights and liabilities of a sole stockholder of a corporation. In *Townsend v. Townsend*, 5 *W. W. Harr.* (35 *Del.*) 493, 168 A. 67, stock of a building and loan association was determined to be personal property, and allowable to a wife under the statute now considered. Section 2048 of the Revised Code of 1935 (Sec. 16 of General Corporation Law) says: "The shares of stock in every corporation shall be deemed personal property * * *." We think that in this

proceeding the stock in the wholly owned corporation must be considered as personal property.

Under the statute, the allowance to the wife may be by gross sum. We think an allowance of $500 under all the circumstances is a reasonable one.

An order will be made in accordance with the prayer of the petition, granting to the wife the sum of $500 from the personal estate of the husband, or, if said sum be not paid, reserving to the Court the right to make an allowance of all or a portion of the corporate stock itself. The order, however, will be made to become effective if and when the decree nisi heretofore entered shall become a final decree, and to become effective in no other event or at any other time.