S. v. S.

*(October 19, 1942.)*

SPEAKMAN, J., sitting.

*Joseph A. L. Errigo* for the petitioner.

*Ivan Culbertson* for the defendant.

Superior Court for New Castle County, September Term, 1942.

No. 137, January Term, 1942.

SPEAKMAN, J., delivering the opinion of the Court:

During the pendency of the trial in this case it became apparent that a medical examination and inspection of the defendant was necessary for the purpose of ascertaining whether he was suffering from incurable incapacity for copulation at the time of the marriage, whereupon on application of the petitioner, the attorney for the defendant consenting thereto, an order was signed appointing two phy-

sicians to examine the defendant and to report whether he was on October 18, 1941 (the day of the marriage), suffering from incurable incapacity for copulation and requiring the defendant to submit himself to examination and inspection at the office of one of the physicians, at a designated time, and directing the sheriff to serve a certified copy of said order on the defendant at least four days before the date fixed for the defendant's appearance for examination. By the return of the sheriff it appears that service of the copy of the order was duly made.

Authorities in England sustain the proposition that on a petition for annulment alleging impotency, where there has not been a triennial cohabitation, it has been regarded as proper to order the defendant to submit himself to a medical examination for the purpose of ascertaining that fact. In England, jurisdiction was vested solely in the Ecclesiastical Courts until the passage of the Matrimonial Causes Act of 1857 (20 & 21 Vict. c. 85).

In those courts the rule was that it was necessary that there should be either a triennial cohabitation or proof that the party was absolutely incapable. *Welde v. Welde* (1730), 2 Lee 578, 161 Eng. Rep. 446.

In *Briggs v. Morgan* (1820), 3 Phill. 325, 161 Eng. Rep. 1339, where it was objected that the suit was premature, it was said that triennial cohabitation was not required where the infirmity could be ascertained at once, and that

"All the great authorities, ancient and modern, subscribe to this, which is the rule of reason, from the Digest of the canon law to Brown, and the oracles of our practice. Godolphin and Oughton."

In *Brown v. Brown,* 3 *Terry* (41 *Del.*) 157, 29 A. 2d, 149, it was said by this Court at the present term, that:

"The Ecclesiastical Courts never existed here, and their

adjudication did not form any part of the Common Law. In the early case of *Jeans v. Jeans,* in 1835, 2 *Harr.* (2 *Del.*) 38, it was conceded that divorce jurisdiction emanated solely from the Act of Assembly, and not from the Common Law."

Though the Ecclesiastical Law of England is no part of our Common Law, yet when that part of the jurisdiction of the Ecclesiastical Courts relating to annulment of marriage and divorce was given by law to our Courts, it is reasonable to believe that we should follow the principles and precedents of the Ecclesiastical Courts in the administration of our law, and this was the opinion of the Court in *Jeans v. Jeans,* 2 *Harr.* (2 *Del.*) 38, in an action for divorce· in which it was contended that the leading principles developed by the Ecclesiastical Courts should be considered as "great lights and sound guides" in the administration of the law of divorce. The opinion in the Jeans case was followed at the present term of Court, in *Brown v. Brown, supra.* See, also, *D. v. D.,* 2 *Terry* (41 *Del.*) 263, 20 A. 2d 139, in which an order was made on an application similar to that in this case.

Under the Canon Law as administered in England, impotency existing at the time of the marriage was ground for annulment. *Briggs v. Morgan,* 3 Phill. 325, 161 Eng. Rep. 1339.

Under our first divorce law passed in 1832 (Vol. 8, Chap. 144), jurisdiction was given to grant a divorce where the male party was actually impotent at the time of the marriage. This law was amended in 1852 by providing for jurisdiction as to divorce where either party was impotent at the time of the marriage. (Code of 1852, Chap. 75, § 1). This continued to be the law until 1907, when a new Act was passed (Vol. 24, c. 221, p. 619). Under its provisions impotency no longer constituted a ground for divorce. It provided

"That a marriage may be annulled for any of the following causes existing at the time of the marriage: (a) Incurable physical impotency, or incapacity for copulation, at the suit of either party: Provided, That the party making the application was ignorant of such impotency or incapacity at the time of the marriage."

This provision has been carried into the Code of 1935, where it appears as 3497(a), and is now the law. It was under this provision that the petition in this case was filed.

Some suggestion has been made to the effect that Section 3497(a) of our Act provides for two separate grounds for annulment because of the use therein of the words "impotency" and "incapacity for copulation."

Impotency, as a ground for the dissolution of marriage, has been defined as the irremediable physical incapacity of one of the parties to a marriage for any reasonable sexual connection with the other where no intercourse too imperfect to satisfy this rule has resulted in actual pregnancy. 1 *Bishop on Marriage, Divorce and Separation,* § 766.

The meaning of the word "copulate" was considered by the Court with great care in the case of *People v. Angier,* 44 Cal. App. 2d 417, 112 P. 2d 659, 660. There the Court said "copulate has had primarily an unvarying significance, to-wit, the act of gratifying sexual desire by the union of the sexual organs of two biological entities. This is the meaning of the word wherever found in statutes and decisions."

If these definitions are correct, then the respective terms as used in our law as a ground for annulment are synonymous. They are also in harmony with the Ecclesiastical Law as a ground for similar relief, where it has been held that mere incapability of conception was not a sufficient ground for a decree of nullity. There the question is wheth-

er there is incapacity for sexual intercourse, or if there is such incapacity can such incapacity be removed. *D—E v. A—G* (1845), 1 Rob. 280, 163 Eng. Rep. 1039.

It is quite evident that the words "incapacity for copulation" as used in our law, are explanatory of the word "impotent," and that they were used for the purpose of removing any thought that incapacity for procreation was included within the meaning of the word impotent.

The defendant did not appear at the hearings, and no testimony was offered on his behalf. By the testimony offered on behalf of the petitioner it was established that the residence of the parties was sufficient to confer jurisdiction of the cause. They were married on October 18, 1941, and each was then thirty years of age. They lived together from the day of their marriage until the first day of the following December, when the petitioner ceased living with the defendant, and since then the marriage has not been ratified. During the time they were living together sexual intercourse was frequently attempted but without success, because of the inability of the defendant for copulation. The first attempt immediately followed the marriage. On this occasion the petitioner first learned of the defendant's inability. She continued to live with him for forty-three days following the marriage, with the hope that the defendant's disability was not permanent. A physician engaged in general practice was produced as a witness and by him it was established that the petitioner was a person normal in all respects, and in his opinion she would be able to have intercourse in a normal way. · It was further established that the defendant did not appear at the appointed time and place for an examination and inspection by the said physician. It was conceded by his attorney that due notice was given and the defendant was advised he could not be compelled to submit to the examination and inspection.

In *Bissell v. Bissell*, 93 N. J. Eq. 537, 539, 117 A. 252,

253, the court considered most of the problems here involved, and I think the case was decided in full accord with the Ecclesiastical Law.

The Court, in referring to the testimony of the petitioner, and the failure of the defendant to appear, said:

"Obviously this is lawful testimony tending to show that the defendant at the time of his marriage was physically and incurably impotent."

██ Although duly notified of the time and place, the defendant failed to appear for an examination and inspection by the physicians. Such failure to appear is quite sufficient to justify the finding that the defendant, at the time of his marriage, suffered from an incurable physical incapacity for copulation. *Pollard v. Wynbourn* (1828), 1 Hagg. 725, 162 Eng. Rep. 732.

A decree nisi will be entered with the right on the part of the petitioner to resume her maiden name.