ALFRED VICTOR DUPONT, Plaintiff, v. DOROTHY ELIZABETH BARTON DUPONT, Defendant.

(*July* 16, 1951.)

HERRMANN, J., sitting.

*Arthur G. Logan* (of Logan, Marvel and Boggs) and *Stephen E. Hamilton, Jr.*, for Plaintiff.

*James R. Morford, William H. Bennethum* and *Edward W. Cooch, Jr.*, (of Morford, Bennethum, Marvel and Cooch) for Defendant.

Superior Court for New Castle County, No. 984, C. A. 1950.

HERRMANN, J.:

On December 7, 1950, the plaintiff filed a petition for the annulment of his marriage with the defendant, alleging that, by reason of an invalid divorce, the defendant had a husband living at the time of her marriage to the plaintiff. By amendment to his complaint, the plaintiff further asserts that the defendant fraudulently induced him to marry her. By her sworn answers, the defendant denies the plaintiff's allegations and she defends the validity of her marriage with the plaintiff.

The defendant now petitions for alimony *pendente lite* and for reasonable legal fees and expenses to enable her to present her defense in this cause. By both affidavit and testimony, the defendant has represented that she is destitute except for funds which she has been able to borrow from friends. Pursuant to a

requirement imposed by the Court, the defendant has filed an affidavit in this cause to the effect that she has not entered into, and will not in the future enter into, any agreement with any attorney for the payment of counsel fees in this action, upon a contingency basis or otherwise. The defendant's attorney has filed an affidavit confirming that an allowance by the Court will constitute the sole source of fees for defendant's counsel in this case.

The petition for alimony *pendente lite* will be considered first.

The plaintiff contends that this Court lacks the power to grant alimony *pendente lite* in an annulment action. He says that such power must be founded upon statute, and that there is no such statute in Delaware. The defendant, on the other hand, urges that the statutory power to grant alimony *pendente lite* in an annulment action may be found in a proper construction of Paragraph 3508, *Revised Code of Delaware*, 1935. She further contends that, even if this is not so, this Court nevertheless has the inherent power, independent of statute, to grant such relief as one of the necessary incidents which follows the general jurisdiction of this Court in annulment actions. There has also been raised in this case the question of whether or not any power, which this Court may have had heretofore to grant alimony *pendente lite*, has been divested by the grant to the Family Court of New Castle County of exclusive original jurisdiction in any matter wherein a husband wilfully neglects or refuses to provide "for the support and maintenance of his wife in destitute and necessitous circumstances". See 45 *Laws of Delaware, Chapter* 241.

At this stage of this case, I consider it unnecessary to decide these questions of jurisdiction. I decline to assume whatever jurisdiction this Court may have with respect to alimony *pendente. lite* because there is now pending in the Court of Chancery of this State a prior action between the same parties,

seeking on the one hand, and opposing on the other, the same remedy, and relating to the same basic questions of fact. In that action, the defendant herein asks the Chancery Court to award her support and maintenance upon the grounds that she was abandoned by her husband, the plaintiff herein, without legal cause and that she is in destitute and necessitous circumstances. The Chancery action was filed on October 13, 1950, before the commencement of this annulment action, and the Chancery Court has taken jurisdiction in the matter. See *DuPont v. DuPont, Del. Ch.* 1951, 79 *A.* 2d 680. In the Chancery suit, the defendant herein seeks support and maintenance for a period commencing on July 28, 1950, the date of the alleged desertion and abandonment, and continuing indefinitely thereafter. By her petition to this Court for alimony *pendente lite*, the defendant asks for support and maintenance for the period commencing on December 7, 1950, the date of the filing of the petition for annulment, and continuing until the cause before this Court may be finally determined. It will be apparent that the period of time for which alimony *pendente lite* is sought is included within that period of time for which support and maintenance are prayed in the Chancery action. Stripped of terminology, the remedy sought by the defendant herein is precisely the same in both Courts. Alimony is, by definition, support and maintenance. *Brown v. Brown,* (1942) 3 *Terry* 157, 28 *A.* 2d 149.

Hence, assuming that this Court has jurisdiction in the matter of alimony *pendente lite* for the defendant, it is a jurisdiction concurrent with that assumed by the Court of Chancery in the matter now pending before it.

It has long been the rule in this State that in cases of concurrent jurisdiction as between this Court and the Court of Chancery, the tribunal which first acquires jurisdiction ordinarily will, as a matter of comity, be permitted by the other to proceed to a final disposition of the case without any interference whatsoever. This inter-court policy was recognized and enforced by the Chancery Court in *Flaherty v. Industrial Trust*

*Co.,* (1935) 20 *Del. Ch.* 403, 178 *A.* 586, 587, where the Chancellor stated: "* * * The Superior Court of this State has decided that in matters lying in the field of the concurrent jurisdiction of law and equity, when a party has elected to proceed in Chancery the Superior Court will not entertain an application for relief in the same connection until the matter is finally determined in Chancery. * * * The spirit of this ruling harmonizes with the general rule that where one court has assumed jurisdiction of a subject matter, other courts on principles of comity between courts will decline to interfere. * * *"

The doctrine is well settled that "when the jurisdiction of law and of equity are concurrent, the one which first takes actual cognizance of any particular controversy ordinarily becomes thereby exclusive." 1 *Pomeroy's Equity Jurisprudence* (*5th Ed.*) § 179.

Aside from the matter of comity, there are practical reasons why this Court should not at this time entertain whatever jurisdiction it may have as to alimony *pendente lite.* If the defendant herein is entitled to support and maintenance from her husband, she may be so entitled for an indefinite period of time commencing on the date of the separation of the parties. This Court could not grant aid to her for any period of time prior to the commencement of the annulment action or after the final disposition thereof. The Court of Chancery, on the other hand, in the exercise of the jurisdiction which it has assumed, may grant complete relief instead of the partial relief *pendente lite* which is the best this Court could possibly afford. This is, therefore, the type of situation wherein the relief available in the equity action, although of the same kind as that given by law, is more efficient and complete. See 1 *Pomeroy's Equity Jurisprudence* (*5th Ed.*) § 175b. If now, in the excercise of whatever jurisdiction it may have, this Court were either to grant alimony *pendente lite* or to deny it, the defendant herein, in either event, would be obliged to proceed with the Chancery action. In either of such events, the Chancery Court would be confronted with

conclusions of this Court, based upon discretion, which would not bind the Chancery Court and with which that Court might or might not be able to agree. It is conceivable that two very different results might be reached by two State Courts of concurrent jurisdiction upon the same basic facts and involving the same parties. This, I think, would be not only contrary to the best interests of the parties litigant but also an undesirable result as a matter of the proper administration of justice.

Accordingly, all further proceedings here upon the defendant's petition for alimony *pendente lite* will be stayed until the final disposition of the action for support and maintenance now pending in the Court of Chancery.

Turning now to the defendant's application for legal fees and expenses, the contentions of the parties are fundamentally the same as those stated above concerning the petition for alimony *pendente lite*. The question for decision, therefore, is whether this Court has the power to allow legal fees and expenses to a defendant wife in an annulment action where she asserts the validity of the marriage.

By Paragraph 3502, *Revised Code of Delaware*, 1935, this Court was given the general jurisdiction to hear and determine all actions for annulment of marriage. The only statutory grant of authority for the allowance of legal fees and expenses in matrimonial matters appears in Code Paragraph 3508, which provides: "The Court may grant alimony to the wife for her sustenance pending her petition for divorce, and may order and direct the husband to pay such sum as may be deemed necessary to defray the expenses in conducting her case, whether the application be on the part of either the wife or husband, and shall protect her from personal restraint. * * *"

The defendant urges that the genesis of causes for divorce and grounds for annulment in this State leads to the conclusion that Code Paragraph 3508, when properly construed, constitutes statutory authority upon the basis of which this Court may allow

legal fees and suit money to her. I deem it unnecessary to find statutory authority, for I am of the opinion that this Court possesses the requisite power, independent of statute.

It is well established that this Court has no Common Law jurisdiction as to annulment of marriage, because in England annulments were granted by the early Ecclesiastical Courts. Such Courts never existed here and the adjudications of those Courts do not constitute any portion of our Common Law. We have, however, repeatedly recognized that the principles developed by the Ecclesiastical Courts should be considered "great lights and sound guides" in the administration of the law of divorce and annulment. *Jeans v. Jeans*, (1835) 2 *Harr.* 38; *D. v. D.*, (1941) 2 *Terry* 263, 20 *A.* 2d 139; *Brown v. Brown, supra; S. v. S.*, (1942) 3 *Terry* 192, 29 *A.* 2d 325, 326.

The most recent reported application of this principle appears in *S. v. S., supra*, an annulment action, where this Court stated: "Though the Ecclesiastical Law of England is no part of our Common Law, yet when that part of the jurisdiction of the Ecclesiastical Courts relating to annulment of marriage and divorce was given by law to our Courts, it is reasonable to believe that we should follow the principles and precedents of the Ecclesiastical Courts in the administration of our law, * * *"

The Ecclesiastical Courts of England granted counsel fees and suit money to a defendant wife in an annulment case as a matter of right. *Portsmouth v. Portsmouth*, 3 *Addams Eccl. Rep.* 63, 162 *Eng. Reprint* 404 (1826).

Hence, following the principles and precedents of the Ecclesiastical Courts, I have concluded that this Court may and should, in the exercise of a sound discretion and upon a proper showing, grant legal fees and expenses to a defendant wife who asserts the validity of the marriage in an annulment action.

It is argued by the plaintiff that, by virtue of the case of *Brown v. Brown, supra*, this Court is not free to follow the

precedent of the Ecclesiastical Court practice in this respect, and that if the pertinent power cannot be found in Code Paragraph 3508, then the power does not exist. I cannot agree. Such construction of the Brown case is founded upon an erroneous interpretation of certain dicta contained therein. The cited case involved the question of the power to grant alimony *pendente lite* in an action for divorce *a vinculo matrimonii*. It did not involve the power to award legal fees in an annulment action. The distinction is a significant one. In England, divorces *a vinculo matrimonii* were granted by Acts of Parliament, whereas, as has been already stated, annulments were granted by the Ecclesiastical Courts. When our Legislature gave the Superior Court jurisdiction over divorces *a vinculo matrimonii*, it was creating a new judicial power, one transformed from a function theretofore considered legislative. Thus, it was to be expected that the Legislature would specify in detail the precise powers of the Court in the exercise of this new jurisdiction. On the other hand, as to annulment actions, this Court was granted a jurisdiction which had been exercised theretofore by the Ecclesiastical Courts and with respect to which there had been established a recognized practice and procedure of which, it may be assumed, the Legislature was aware. I believe it to be reasonable to assume that, by giving to this Court the general jurisdiction to hear and determine annulment cases, the Legislature intended to vest in this Court all powers then deemed usual, necessary and proper for the complete administration of justice in such matters. For these reasons, I do not consider that the decision in the Brown case conflicts in any way with my conclusion that this Court has the power, independent of statute, to grant proper counsel fees and legal expenses to a defendant wife who asserts the validity of the marriage in an annulment action brought by her husband.

It is recognized that there is a contrariety of opinion on the subject of the existence of this jurisdiction in the absence of specific statutory authority. I think, however, that the better

reasoning and the weight of authority support the conclusion which I have reached. In *Higgins v. Sharp*, (1900) 164 *N. Y.* 4, 58 *N. E.* 9, 10, the Court of Appeals of New York had for determination the question of whether, in the absence of statute, the trial court had the power to grant alimony *pendente lite* and counsel fees in an action against a wife to annul a marriage. At the time of that decision there existed in New York a statute authorizing the allowance of counsel fees to enable a wife to defend in an action for divorce or separation, (*N. Y. Code of Civil Procedure*, § 1769), but no such statute existed with respect to annulment actions. The Court there stated: "* * * But it does not follow that, because the statute which authorizes and regulates actions to annul a marriage is silent as to alimony or counsel fees, the court is without power to allow either or both in a proper case. * * * The general jurisdiction conferred by the statute to entertain such actions carries with it, by implication, every incidental power necessary for its proper exercise. When a statute gives the court jurisdiction over a class of actions, it is not necessary that all the powers of the court, or all the details of the procedure and practice, should be specially enumerated. For the purpose of administering justice in such cases, the court may resort to general rules of practice, and may make such orders in the case as justice requires, and may exercise such incidental powers as are usual or necessary in such cases. * * * When the court was vested with jurisdiction in such cases, the incidental power to guard and protect the rights of the wife, which had always been regarded as a part of the jurisdiction, necessarily followed and attached, upon the plainest principles of reason and justice. * * *"

Similarly, in *State ex rel. Wooten v. District Court*, (1920) 57 *Mont.* 517, 189 *P.* 233, 239, 9 *A. L. R.* 1212, the Supreme Court of Montana, in an exhaustive opinion reviewing numerous authorities on the question, held that the statute of that State, providing for the allowance of legal fees in actions for divorce and for support and maintenance, did not constitute statutory

authority for making such an award in an annulment case. That Court held, however, that statutory provisions are not the exclusive measure of the Court's jurisdiction in annulment cases. It was there stated that the defendant wife in an annulment action:

"* * * is presumed to be innocent * * * until she is proved guilty, and, until such presumption is overcome by competent evidence, she is, as to all the world, the lawful wife of plaintiff and entitled * * * to the means necessary to properly meet a charge which will, if proven, deprive her not only of her position as wife, but to a great extent destroy her reputation as a woman, and it would seem that the reasons for awarding a woman, under such circumstances, the means to defend, are more cogent than in the ordinary case of divorce and appeal more strongly to justice and equity.

"We are therefore of the opinion that the court, vested with authority to hear and determine actions for the annulment of marriage, has fundamental jurisdiction to grant * * * suit money, and attorney's fees to the wife in a suit by her husband, on a proper showing, as a power incidental to the major jurisdiction * * *."

It is generally recognized that "in litigation between a husband and wife, the wife is regarded as a privileged suitor and is entitled to aid from her husband when necessary to properly present her cause." *Marker v. Marker*, (1856) 11 *N. J. Eq.* 256; *Biddle v. Biddle*, (1929) 104 *N. J. Eq.* 313, 145 *A.* 639. See also *Willits v. Willits*, (1909) 76 *Neb.* 228, 107 *N. W.* 379, 5 *L. R. A., N. S.*, 767; *Hunt v. Hunt*, (1909) 23 *Okl.* 490, 100 *P.* 541, 22 *L. R. A. (N. S.)* 1202; *Webb v. Wayne, Circuit Judge*, (1906) 144 *Mich.* 674, 108 *N. W.* 358; *Morgan v. Morgan*, 148 *Ga.* 625, 97 *S. E.* 675, 4 *A. L. R.* 926; 9 *A. L. R.* 1222; 110 *A. L. R.* 1284.

In support of the opposite view, the plaintiff cites *Arndt v. Arndt*, (1948) 399 *Ill.* 490, 78 *N. E.* 2d 272; *Meredith v. Shakespeare*, (1924) 97 *W. Va.* 514, 125 *S. E.* 374, and *Stewart v. Vander-*

*vort,* (1890) 34 *W. Va.* 524, 12 *S. E.* 736, 12 *L. R. A.* 50. I do not find these cases to be persuasive.

Finally, the plaintiff urges that, if this Court finds that it has the power to grant legal fees and expenses to the defendant, the Court's discretion should not be exercised in her favor because it should be apparent from her admissions in the depositions and elsewhere in the record, that (1) the marriage is void; (2) the defendant has committed obvious perjury; (3) the defendant wrongfully withholds certain unique personal property belonging to the plaintiff; and (4) the defendant has not sustained the burden of proof that she is in necessitous circumstances.

This case has not reached the stage for final consideration and determination on the merits. To rule now on the plaintiff's contentions that the marriage is void and that the defendant has committed perjury would require the Court to prejudge the case on its merits and to go much farther toward the final disposition of the case than its status, or the nature of the defendant's present application will permit. If the defendant holds property belonging to the plaintiff, to the sole possession of which he is now entitled, there is available to the plaintiff an appropriate remedy for its recovery. With respect to the defendant's showing of need for monetary assistance to defend in this cause, while there is indeed some doubt as to her access to certain funds, I have resolved that doubt in her favor without too much regard for quantum of proof. In the consideration of an application of this kind, the applicant must have the benefit of any such doubt. I consider the above mentioned affidavits which have been filed in this cause by the defendant and her attorney to be an adequate showing to justify the exercise of this Court's discretion in the matter.

An appropriate allowance for legal fees and expenses will be made to the defendant.

Order may be submitted on notice.