ELDON E. GILBERT, Plaintiff, v. DORIS C. GILBERT, Defendant.

(*November* 20, 1961.)

LYNCH, J., sitting.

*Thomas Herlihy, Jr.*, for Plaintiff.

*C. W. Berl, Jr.*, for Defendant.

Superior Court for New Castle County, No. 194, Civil Action, 1961.

LYNCH, J.:

On February 7, 1961 plaintiff sued for divorce, charging that defendant wilfully deserted plaintiff about January 9, 1959, which wilful desertion has continued to the time of filing the suit. In her answer defendant has denied the wilful desertion, but admitted leaving the marital domicile.

Defendant has petitioned the Court to allow her suit money and alimony *pendente lite*. Plaintiff has moved to dismiss this petition so far as it relates to the claim for alimony *pendente lite*.

The parties were married on August 3, 1941 and lived together as husband and wife until January 9, 1959. On or about that date, the wife left the marital domicile.

Doris C. Gilbert, the defendant, sued the plaintiff in 1957 (No. 337 Civil Action, 1957) for a divorce in this Court, alleg-

ing that her husband, the plaintiff here, was guilty of habitual drunkenness. After hearing a number of witnesses for both parties, including a psychiatric expert, her divorce petition was dismissed by the Court which refused her a divorce.

The plaintiff contends by his motion to dismiss that the defendant's motion for alimony, suit money, and expenses fails to state a claim upon which relief can be granted and, *inter alia*, that any action for her support and maintenance should be brought in the Family Court. The parties have been before the Family Court of this County relative to the custody of their son; and the defendant, at one time, filed a complaint there for support of herself and her son. She did not, however, press for any action on the matter of her support, and there is no Family Court order for the support of the wife or the son. It is admitted that the plaintiff has, however, been making voluntary payments to the defendant for the support of the child.

The question for decision at this time is the jurisdiction of this Court to consider and make an award to the defendant-wife of alimony *pendente lite* in light of the Family Court Statute, *Title* 10 *Del. C. Ch.* 9, § 951.

That cited section provided that the Family Court was to have "Exclusive Jurisdiction" over cases involving the failure or refusal of a husband to support his wife if she is "in destitute or necessitous circumstances". Did the enactment of that section of the Family Court Statute affect the jurisdiction of this Court to grant alimony *pendente lite* so as to divest this Court of the jurisdiction granted by *Title* 13 *Del. C.* § 1530, to allow alimony *pendente lite* to wives in need of such alimony?

*Title* 10 *Del. C.* § 951 provides, *inter alia,*—

"951. Exclusive jurisdiction

"The Family Court shall have exclusive original jurisdiction in all proceedings in New Castle County—

\* \* \* \* \* \*

"(6) Wherein any husband, without just cause, \* \* \* wilfully neglects or refuses to provide for the support and maintenance of his wife in destitute or necessitous circumstances \* \* \*."

Section 4(f) of the original Statute contained the same language now to be found in 10 *Del. C.* § 951.

The Family Court Statute was originally enacted as Chapter 241 of Volume 45, *Laws of Delaware.* Section 1 of that Statute was titled "Purpose, Basic Principle and Construction" and it recited, in part,—

"The purposes of this Act are \* \* to give original and exclusive jurisdiction to one Court in which matters pertaining to a family, \* \* \* may be adjudicated, the said Court to have jurisdiction over both civil and criminal matters, \* \* \*. The sections of this Act shall be liberally construed that these purposes may be carried out."

The Family Court Statute has been amended at practically every session of the General Assembly since the time of its original enactment, but there has never been any change in the fundamental language as set forth in Section 1, 45 *Del. Laws, Ch.* 241, which is now *Title* 10 *Del. C.* § 902 and quoted above; although revised in the course of the 1953 Codification of our Laws, it contains substantially the same and all of the language which originally appeared in Section 1 of 45 *Del. Laws, Ch.* 241.

The motion under consideration is based on *Title* 13 *Del. C.* § 1530, which reads:

"§ 1530.    Alimony and legal expenses

"The court may grant alimony to the wife for her sustenance pending her petition for divorce, and order and direct the husband to pay such sum as is deemed necessary to defray the expenses in conducting her case, whether the application is on the part of either the wife or husband, and shall protect her from personal restraint. The court, in the execution of the powers conferred by this chapter, may employ such compulsory process as it deems proper."

This section was a part—Section 12—of 24 *Del. Laws, Ch.* 221, adopted in 1907, which was a complete revision of our Divorce Statute at which time the General Assembly adopted the Uniform Divorce Law. The section was amended in 1909, 25 *Del. Laws, Ch.* 213, § 3, when the General Assembly added what is now the last sentence of this section. 24 *Del. Laws, Ch.* 221 was adopted pursuant to the provisions of the 1897 Contitution, Art. 2, § 18 which reads:

"Section 18. No divorce shall be granted, nor alimony allowed except by the judgment of a court, as shall be prescribed by general and uniform law."

The history of our divorce statutes was traced in *Brown v. Brown*, 3 *Terry* 157, 29 *A.* 2d 149 (*Super. Ct.*, 1942). It was said, 3 *Terry* at 163, 29 *A.* 2d at 151:

"* * * From 1789, and until prohibited by the Constitution of 1897, divorces were granted at almost every session of the Delaware Legislature, and amounted to approximately 500 in number. These legislative divorces continued with increasing frequency, notwithstanding our first divorce Act of February 3, 1832 (*Laws of Delaware*, Vol. 8 Chap. 144), gave to the Superior Court 'sole cognizance of granting divorces'."

Judge Rodney pointed out in *Brown v. Brown* that Law Courts had no jurisdiction to grant divorces at Common Law. His statement "there is no Common Law jurisdiction as to divorce" appears 3 *Terry* at page 163, 29 *A.* 2d at page 152.

He also noted that "the Ecclesiastical Courts exercised sole judicial jurisdiction over matrimonial causes", and he observed "The Ecclesiastical courts never existed here, and their adjudication did not form any portion of the Common Law." (3 *Terry* at pp. 163-164, 29 *A.* 2d at page 152); compare *DuPont v. DuPont*, 32 *Del. Ch.* 413, at 429, 85 *A.* 2d 724, at 733.

■   The significance of these statements is this,—that matters of divorce and alimony are entirely statutory and the right of a wife to alimony must be based on some statutory provision.

In light of Art. 2, § 18, 1897 Constitution, *supra*, and the statutory history of divorce and alimony (which will be set out hereafter) there are no problems of construction of the Family Court Statute, *supra*, and Title 13 *Del. C.* § 1530, such as our Courts faced in *DuPont v. DuPont*, 32 *Del. Ch.* 413, 85 *A.* 2d 724 (*Supreme Ct.*, 1951); *Delaware Trust Co. v. McCune et al.*, 32 *Del. Ch.* 113, 80 *A.* 2d 507 (*Ct. Ch.*, 1951); *Glanding v. Industrial Trust Co.*, 28 *Del. Ch.* 499, 45 *A.* 2d 553 (*Supreme Ct.*, 1945); and see *DuPont v. Family Court, Del. Ch.*, 153 *A.* 2d 189 (*Supreme Ct.*, 1959).

The simple fact of the matter is that the public policy of this state with respect to matters of divorce, alimony, alimony *pendente lite* and support of a destitute wife by a husband, are now all matters of statute. What the General Assembly has provided by way of statutes is the only source of judicial power in this Court in these matters, including matters of alimony *pendente lite* and support of a destitute wife by husband. We have no constitutional problems in the construction of the statutes cited above.

The question of whether this Court has jurisdiction to grant alimony *pendente lite* was raised for the first time in 1951 before Judge Herrmann in *DuPont v. DuPont*, 46 *Del.* 280, 282, 83 *A.* 2d 105 (*Superior Ct.*, 1951). Judge Herrmann

declined to decide the question in view of the then pending litigation in the Court of Chancery between the same parties over matters of the wife's support. See *DuPont v. DuPont,* 32 *Del. Ch.* 56, 79 *A.* 2d 680 (1951).

■ By way of comment, it may be said that until 1945 there could be no doubt as to the jurisdiction of this Court to award alimony *pendente lite* in those instances where the circumstances justified an allowance. Plaintiff argues that the adoption of the Family Court Statute, *supra,* deprived this Court of the jurisdiction, granted by the General Assembly, 24 *Del. Laws, Ch.* 221, 1907, to award alimony *pendente lite* in the appropriate case. His argument is based on the well known principle of statutory construction, *i.e.,* legislation conferring exclusive jurisdiction in certain cases upon one court will, by implication, oust the jurisdiction of another court which therefore had exclusive or concurrent jurisdiction in such cases. 15 *C. J.—Courts—*§ 134, page 822; 21 *C. J. S. Courts* § 92, page 143, and this seems applicable here. The principle is of long standing, having been first decided in 1832 by Chief Justice Tindal in *Crisp v. Banbury,* 8 *Bingham,* 394, 131 *English Reprint,* 445. In that case a depositor sued a savings bank to recover money deposited with that bank. A statute had been adopted by the English Parliament providing that in any dispute between a savings bank and an individual depositor, "the matter so in dispute shall be referred to the arbitration of two indifferent persons to be chosen and appointed * * * and whatever award shall be made by the said arbitrators * * * shall be binding and conclusive, and shall be final to all intents and purposes, without any appeal." It was argued by the defendant in the cited case that the statute was imperative and ousted the jurisdiction of the courts of law. Plaintiff, on the other hand, contended "that the jurisdiction of the courts of common law is not ousted by any words to be found in this section; and that the utmost which the section contemplates is, to create a

concurrent, and not an exclusive jurisdiction in the arbitrators * *."

In deciding the question before him, Chief Justice Tindal ruled that "the plaintiff is barred from maintaining the present action in a court of law and must pursue the remedy provided by the statute." Continuing, it was said by the court,

"* * *, the jurisdiction of the Superior Courts of Westminister is not to be ousted, except by express words, or by necessary implication * * *, yet, where the object and intent of the statute manifestly requires it, words that appear to be permissive only, shall be construed as obligatory, and shall have the effect of ousting the courts of their jurisdiction, * * *. Now in this case the legislature has enacted that disputes of the description of the present 'shall be referred',— words which, in their natural force, denote an obligation, not a permission only; and unless these words are construed to be compulsory on the Plaintiff, they mean nothing. If they are not compulsory on the Plaintiff, neither can they be so, upon any principle of fair construction, upon the Defendant. And if recourse to arbitration is not intended except both parties choose to adopt it, then indeed the act is made a dead letter; for it would be competent for both parties to refer the dispute to arbitration, if they both agreed upon it, without the intervention of the statute. In order, therefore, to give these words of the statute any force or operation, the word shall must be construed as obligatory, that is, that the matter in dispute shall of necessity be referred to arbitration, and not be determined in any of the courts of Westminister Hall. * * *."

An excellent example of the principle and how it is applied is to be found in *Gassenheimer v. Dist. of Columbia*, 6 *App. D. C.* 108 (*Dist. of Columbia Ct. of App.*, 1895). In that case an information had been filed in the Supreme Court of the District of Columbia, charging Gassenheimer with violation of a statute regulating the sale of liquors in the Dis-

trict of Columbia [Act Cong. March 3, 1893, 27 Stat. 563]. After the conviction, Gassenheimer appealed, and contended that a subsequently enacted statute, other than that under which he was charged, had taken from the Supreme Court of the District of Columbia jurisdiction over the subject matter of the sale of intoxicating liquors. The specific language of the statute as to which it was contended that there had been a change provided "that prosecutions for violations of the provisions of this act shall be on information filed in the police court." The jurisdiction of the Supreme Court of the District of Columbia included cognizance "of all crimes and offenses arising within the District." In another statute the Congress had provided that "the Police Court shall have original and exclusive jurisdiction of all offenses against the United States committed in the District of Columbia not deemed capital or otherwise infamous crimes, * * *; and of all offenses against the laws and ordinances of the District in force therein." [*Rev. St. D. C.* § 1049, *Act Cong. June* 17, 1870, 16 *Stat.* 153].

In deciding the case, the District of Columbia Court of Appeals laid great stress, 6 *App. D. C.* at 114, on the above cited section of the statute, which provided "that prosecutions for violations of the provisions of this act shall be on information filed in the police court", saying that otherwise this section "of the act would have been wholly useless and unnecessary. To hold that the concurrent jurisdiction continues would be to nullify the effect of that section 15; and this we do not think that we ought to do. We see no reason so to do."

After considering the various arguments that had been made in the case on the part of the prosecution and by the defense, the District of Columbia Court of Appeals referred, 6 *App. D. C.*, at 117, to the language of Chief Justice Tindal in *Crisp v. Banbury, supra,* and said that it "states the rule more accurately" than it was stated in *Commonwealth v.*

*Hudson,* a decision by Chief Justice Shaw of the Supreme Court of Massachusetts, and reported in 11 *Gray* 64, 65. The District of Columbia Court of Appeals continued:

"* * *. For, while repeal by implication is said not to be favored, it is beyond question true that there may be repeal by necessary implication as well as by express words; and there is no reason why the jurisdiction conferred upon courts might not be ousted or repealed by the one mode as well as by the other, provided the implication is sufficiently strong for the purpose."

The effect of the use of the word "exclusive" in a statute, vesting "exclusive" jurisdiction in a judicial tribunal was considered in *Davidson v. Schmidt,* 146 *Mo. App.* 358, 124 *S. W.* 552, 553 (*St. Louis Court of Appeals,* 1910). It was pointed out by the Appeals Court that it must appear, of course, by use of the word "exclusive" that "the Legislature intended, not only to confer jurisdiction on the new tribunal, but also to divest, the jurisdiction which theretofore obtained in the old one".

Our Supreme Court in *Glanding v. Industrial Trust Co., et al., supra,* said of the statute there under consideration, 28 *Del. Ch.* at page 513, 45 *A.* 2d at 559:

"The jurisdiction conferred under Chapter 143 aforesaid is but a permissive or conditional jurisdiction and in no respects is it exclusive or absolute. No expressed prohibitory language appears, nor are we able to find a clear intent from the language employed to restrict or limit the exercise of equitable jurisdiction. * * *"

Because of possible constitutional problems, the Court refused to apply the Rule of Construction it recognized, so it cannot be said wholly that *Glanding v. Industrial Trust Co. et al., supra,* is clear authority in support of the Rule of Construction that has been discussed at page 374 *et seq., supra.* It would appear, however, that had there been no constitu-

tional problems and the statute under consideration had used the word "exclusive", such as it appears in 10 *Del. C.* § 951, the Supreme Court would have applied the Rule of Construction it had recognized, and as is shown above. See *DuPont v. DuPont*, 32 *Del. Ch.* at 61, 79 *A.* 2d at 682.

It seems desirable that there is a proper comprehension of the concept of alimony. Judge Herrmann pointed out in *DuPont v. DuPont, supra,* 46 *Del.* at 284, 83 *A.* 2d at 107, "Alimony is, by definition, support and maintenance [citing] *Brown v. Brown,* 1942, 3 *Terry* 157, 28 *A.* 2d 149." The historical background of "alimony" was considered by this Court in *Addicks v. Addicks,* 1 *Marv.* 338, 15 *Del.* 338, 41 *A.* 78 (*Super. Ct.,* 1894), where the Court, 1 *Marv.* at page 345, 41 *A.* at page 80 recognized the affinity and relationship of the non-support statute and the alimony provisions of the divorce law. The Court stated the non-support law and alimony questions are to be considered in connection with each other and it may be assumed then they are similar, at least, in purpose. The Supreme Court in *DuPont v. DuPont,* 32 *Del. Ch.* at page 427, 85 *A.* 2d at page 732 stated that "alimony" and "separate maintenance" in "* * * substance * * * seem to have been the same." Further consideration was given to the concept of "alimony" in *Brown v. Brown, supra,* and it was noted that alimony developed in our law at a time when the common law considered the husband as having marital rights in the possession of the wife's personalty and realty. It may be said that the Married Women's separate Property Acts have changed this legal concept, see *Yonner v. Adams,* 2 *Storey* ——, 167 *A.* 2d 717 (*Super. Ct.,* 1961); hence, perhaps we should look upon questions involving "alimony" and non-support statutes and the right in Chancery of "maintenance", as involving similar if not the same questions; they will be so regarded for the purposes of this case.

Chancellor Seitz, sitting as a Superior Court Judge, in *Fulling v. Fulling,* 11 *Terry* 451, 134 *A.* 2d 263 (1957), allud-

ed to *Brown v. Brown, supra,* and said (11 *Terry* 454, 134 *A.* 2d 264) that it—

"* * * states that a wife must show 'need' in order to obtain statutory alimony. However, since the husband had a common law duty to support his wife, it is apparent that her showing of 'need' would not be the strict showing of necessity required under the statute in order to obtain interlocutory expense money. * * *"

The Court of Chancery in 1958, in *Mayer v. Mayer,* 37 *Del. Ch.* ———, 144 *A.* 2d 140, 141, said of a petition filed by a divorced wife who sought an order for support:

"In Delaware, the basic statute having to do with the duty of a husband to support his wife is § 502 of *Title* 13 *Del. C.* This statute refers solely to the obligation of a 'husband' to support his 'wife', and provides criminal sanctions on proof of non-support. * * *"

The Family Court Statute, 10 *Del. C.* § 951, imposes the obligation of support on a husband toward his wife, if she is "in destitute or necessitous circumstances".

Doubt has existed since 1951, see the *DuPont v. DuPont cases,* cited on page 374, *supra,* of the jurisdiction of this Court in matters involving alimony *pendente lite.* Comment was made at page 373, *supra,* on the frequency of amendments to the Family Court Statute since its original enactment in 1945. Notwithstanding, no steps have ever been taken by the General Assembly to clarify jurisdiction of this Court over alimony *pendente lite.* In short, it appears that the General Assembly has acquiesced and it would appear necessary to give some significance to this acquiescence, see 50 *Am. Jur.*— *Statutes*—§ 326, pages 318-319, and it would, therefore, appear that the General Assembly by this acquiescence intended to make clear to the people of this state that in enacting the Family Court Statute the General Assembly definitely

meant to take from this Court all jurisdiction over matters involving alimony *pendente lite.*

Defendant's attorney argues that—

"* * * the Legislature does not have the power to deprive the Superior Court of cases involving alimony *pendente lite* unless it provides a duplicate remedy in another court. This it has not done in this instance * * * and thus any attempt to confer 'exclusive jurisdiction' under these circumstances is a nullity by reason of unconstitutionality."

This is the same type of argument as was advanced in *DuPont v. DuPont,* 32 *Del. Ch.* 413, 85 *A.* 2d 724 (*Supreme Ct.,* 1951). There were constitutional considerations in that case and the argument was logically advanced by reason thereof. The Superior Court of Pennsylvania, in *Meinel v. Meinel,* appropriately noted—"The right to alimony *pendente lite* is statutory." 109 *Pa. Super.* 159, 167 *A.* 385 (1933). The Supreme Court of New Mexico, in *Bardin v. Bardin,* 51 *N. M.* 2, 177 *P.* 2d 167 (1947) declined to give effect to arguments advanced in that case involving constitutional considerations. In *Timmerman v. Timmerman,* 41 *A.* 2d 24, 26, 23 *N. J. Misc.* 52, the Court differentiated between a right to alimony based on a contract and alimony under a statute, and said:

"* * * the courts consider the right to alimony which is a decree of money payments as a purely personal right, not in any sense a property right. On the other hand, contract rights are property rights. * * *"

There are no cases by our Courts holding that a wife has a vested right to be allowed alimony *pendente lite* and counsel have not directed the Court to any cases holding that the wife has such a vested right. It cannot be overlooked that our Court, *Beres v. Beres,* 2 *Storey* ——, 154 *A.* 2d 384 (*Super. Ct.,* 1959) ruled there is no jurisdiction in this Court to

award permanent alimony, since the statute makes no provisions for it.

Even if this Court now holds that it has no jurisdiction to grant a wife alimony *pendente lite*, Mrs. Gilbert still has available to her the remedies of the non-support statute in the Family Court and a suit for separate maintenance in our Court of Chancery, as defined in *DuPont v. DuPont*, 32 *Del. Ch.* 413, 430, 85 *A.* 2d 724, 733 (*Sup. Ct.*, 1951), hence, she cannot argue that she is remediless.

Plaintiff's motion to dismiss defendant's petition for an order directing plaintiff to pay her alimony *pendente lite* is granted.

Order on Notice.