50 So.2d 428

**WEEMS v. WEEMS.**

8 Div. 551.

Supreme Court of Alabama.

Nov. 24, 1950.

Rehearing Denied Feb. 22, 1951.

See also 253 Ala. 205, 43 So.2d 397.

Walker & Walker, of Opelika, and R. C. Wallace and C. S. Moon, of LaFayette, for petitioner.

A. A. Carmichael, Atty. Gen., and Jas. T. E. Hardin, Asst. Atty. Gen., opposed.

Potts & Young, of Florence, for appellant.

Bradshaw & Barnett, of Florence, for appellee.

212

STAKELY, Justice.

The appellant, Beatrice Weems, filed her bill of complaint against her husband John S. Weems for divorce upon the ground of cruelty and reasonable apprehension of great bodily harm or death at his hands. In the bill custody of their three children is sought, Billy Weems 15 years of age, Bobby Weems 11 years of age and Jimmy Weems 9 years of age. In a cross bill the respondent sought the custody of the three children and a money decree for a fund alleged to belong to respondent under circumstances which will be more fully hereinafter set forth. The court made a final decree denying the divorce sought by Beatrice Weems, granting the custody of the eldest child to the mother and granting custody of the two younger children to the father. In its decree the court also ordered the complainant to pay to the respondent the sum of $750. From the foregoing decree Beatrice Weems prosecutes this appeal.

I. No good purpose will be served by setting out all the evidence in this case in detail. James v. James, 242 Ala. 140, 5 So.2d 616. It is sufficient to say that tendencies of the evidence which support the right of Beatrice Weems to a divorce may be summarized as follows. At the instance of the uncle of John S. Weems, Polk Butler, father of the appellant, went to the home of appellant and appellee near Killen on March 3, 1949. Beatrice Weems met her father at the truck crying and talking about appellee's threats to kill her. She appeared to be frightened. Polk Butler thereupon moved his daughter and the three children to a small house on his place. About a year prior to March 13, 1949 John Weems threatened to kill Beatrice Weems and the three minor children by blowing their brains out. He kept a gun and shells for the gun in the house. Repeatedly, from that time until the family was moved to the place of Polk Butler, he nagged his wife, "threw fits" and repeatedly threatened to kill her. The result was to make her life miserable and cause her to be so extremely nervous as to require medical attention in the spring of 1949. One week prior to the separation of Beatrice Weems and her husband on March 13, 1949, he told her that the devil was after him because of his treatment of her and the children. On March 13, 1949 he came towards her mumbling something which she could not understand "with his fists drawn up." She was so scared that she ran out of the house.

Dr. Waddell, a physician, testified that he examined Beatrice Weems in the spring of 1949 and at that time she was suffering from a nervous condition and insomnia. He testified that in his opinion worry and excitement often caused nervousness of this kind and that he found nothing physically wrong with her. He prescribed a nerve sedative.

Buford Butler, a brother of appellant, testified that he was in a room adjoining the kitchen in March 1949 and that while appellant and appellee were in the kitchen he saw appellee draw his fists on appellant and at this time appellee was mumbling something.

Billy Weems, oldest son of appellant and appellee, testified he was 15 years of age and that about 2 years prior to the trial while he and his father were in a field near their home, his father threatened to kill

him if he ran home, that on another occasion his father knocked him down causing his head to strike à table and cutting his head and that he had heard his father while they all lived near Killen, Alabama, threaten to run his mother and his brothers off the place.

On March 16, 1949 on medical advice John S. Weems was committed to the Bryce Hospital for the Insane at Tuscaloosa. He remained there until May 23, 1949, at which time he returned to Lauderdale County. He introduced in evidence four letters which he had received from his wife during this period expressing her love and the love of the children for him and the hope that he would soon get well. He received a fifth and last letter from his wife dated April 1, 1949 in which she stated that she had received a letter from the doctors at Bryce Hospital saying that they could find nothing wrong with him and that she was through with him.

According to Beatrice Weems when she first heard from the medical officers at Bryce Hospital concerning her husband's condition she thought that her husband's cruel treatment of her and their children resulted from mental trouble. When she found out that there was nothing wrong with her husband's mind and that his troubles were purely of a nervous order, she could not then excuse his cruel treatment. She introduced a letter written to her by her husband while he was confined at Bryce Hospital at Tuscaloosa in which he said: "I believe if I get out of here I will do better from now on, if you and the boys can forgive me for the way I done before."

According to the testimony of Beatrice Weems she continued to sleep with appellee and live with him after his threat to kill her which was made about one year prior to the separation but that she completely separated from him when he threatened her on or about March 13, 1949.

■ In divorce actions predicated on the ground of cruelty any conduct which furnishes reasonable apprehension that the continuance of cohabitation would be attended with bodily harm is legal cruelty

though no actual physical violence has been committed. Carr v. Carr, 171 Ala. 600, 55 So. 96; Goodrich v. Goodrich, 44 Ala. 670; Williams v. Williams, 239 Ala. 162, 194 So. 507; Bailey v. Bailey, 237 Ala. 525, 187 So. 453; Pitchford v. Pitchford, 222 Ala. 612, 133 So. 718.

■ It is true that the appellant continued to live with her husband after his threat to blow out her brains and the brains of the children about one year prior to their separation, but she did not continue to sleep with him after they moved to her father's place in March 1949 and after he threatened to kill her. In cases of this kind condonation is conditional. A renewal of the causes of complaint revives the right of the condoning party to insist upon the former offense. Turner v. Turner, 44 Ala. 437; Black v. Black, 199 Ala. 228, 74 So. 338; Atkins v. Atkins, 254 Ala. 272, 48 So. 2d 200.

■ Upon a careful consideration of the evidence and its tendencies we are of opinion that Beatrice Weems is entitled to a divorce and that the court was in error in denying this relief. It is so ordered.

■ II. We cannot emphasize too often that where the custody of minor children is involved the welfare and best interest of the children is the paramount consideration. Lewis v. Crowell, 210 Ala. 199, 97 So. 691; Hill v. Gay, 252 Ala. 61, 39 So.2d 384. The undisputed evidence in the case shows that Beatrice Weems is in all respects a fit, suitable and proper person to have the custody of the minor children. Even the appellee concedes that her character is "perfect". The children now live with her in a large and commodious home with her father and mother. This house is situated on a highway along which school busses travel and which convey the children to the public school. The children are properly fed and clothed and they regularly attend religious services with their mother. Polk Butler, the father of Beatrice Weems, testified that his home is open to her and the children and that they are welcome to live in his home as long as they wish.

The record shows that the children desire to live with their mother and on the

contrary do not desire to live with their father. Billy Weems testified that he was afraid of his father, that he heard his father threaten to kill his mother and the three children by "blowing their brains out" and on one occasion he threatened to kill Billy while working in a field.

■ Considering the age of the children, their wishes in the matter are entitled to much weight. Wright v. Price, 226 Ala. 591, 147 So. 886; Chandler v. Whatley, 238 Ala. 206, 189 So. 751; Hill v. Gay, supra.

The testimony in the case is without conflict that John S. Weems, the father, was committed to Bryce Hospital on March 19, 1949 on the advice of Dr. Simpson of Florence, Alabama. Letters written from the hospital by the doctors show that his condition was such that even on May 16, 1949 he was not then ready "to be given a trial at home." He admitted that after his return from the hospital in May, 1949, Billy Weems and Jimmy Weems ran away from school when he went to school to see them. His letter written in March, 1949, which has been referred to, indicates that the children have reason to fear their father.

■ According to his testimony the children if he receives their custody would live with him in the home of his uncle John H. Weems and his aunt, a sister of John H. Weems. He testified "I think my aunt will help", but neither the uncle nor the aunt testified and there is nothing to show that they will welcome or even accept the children in their home. The record is silent as to what kind of conveniences, physical, moral or otherwise, would be afforded the children in the home of his aunt and uncle. The testimony shows that the appellee has no property or source of income except his earnings which amount to about $3 per day when he is employed. We think it wise for these young brothers to be allowed to grow up together and not be separated in different localities and homes. The custody of the oldest child has already been awarded to the mother by the court. Under all the circumstances in the case, which need not be set out in further detail here, we think that the custody of these three minor boys

should be awarded to their mother, the father to have such right of reasonable visitation as the court may direct. In awarding the custody of the two youngest boys to the father, we think the court was in error. Green v. Green, 249 Ala. 150, 30 So.2d 905; Marsh v. Marsh, 250 Ala. 31, 33 So.2d 1; Brown v. Brown, 229 Ala. 471, 158 So. 311.

■ III. In its decree the court ordered appellant to refund to the appellee the sum of $750 and rendered judgment against appellant in favor of appellee for this amount. In about February 1949 the appellee and appellant sold their home realizing from the sale a cash consideration of something more than $2100. It is conceded that the appellant worked and helped to pay for the home. The proceeds of this money were deposited in the State National Bank of Florence, Alabama. Tendencies of evidence also show that before he left for the hospital the appellee authorized the appellant to sell certain farm implements and tools. A sale of these articles brought $228, which was put in the fund. Before he left for the hospital the appellee signed some checks in blank and delivered them to appellant, the idea being that these checks would provide a means for the living expenses of Beatrice Weems and the children. Beatrice Weems transferred the fund to her father, it being her idea that the fund would thereby be better conserved. Out of this fund living expenses were paid and some necessary medical expenses. There appears to be a balance in the fund of about $1242.49. The decree is for the part of this fund which the court thought should go back to the appellee upon his return from the hospital. We have carefully considered the evidence on this phase of the case and see no reason to disturb the decree of the court in this respect, except that the cause is remanded to the lower court for such order as the court may deem best for the maintenance and support of the children, including further orders if necessary in this connection with respect to this fund.

■ It is urged that the matter here involved is not a proper subject matter for

a cross bill since it is not germane to the relief sought in the original bill. We think this objection is not well taken. Riley v. Wilkinson, 247 Ala. 231, 23 So.2d 582. The purpose of the original bill is for a divorce and the custody and support of the children and since this fund was set up for the support of the wife and children, we see no reason why the equities between husband and wife relating to this fund could not be adjudged in the present case since all matters relating to the marriage relationship, the joint assets of the parties and the custody and support of the children should be settled in one suit in order to avoid further and extended litigation. Dancy v. Dancy, 253 Ala. 207, 43 So.2d 893; Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244; Stearnes v. Woodall, 218 Ala. 128, 117 So. 643.

We realize that the court's decree was rendered after the case was tried orally before the court and we have often pointed out the presumption which attends a decree rendered under such circumstances but as we said in Chandler v. Whatley, 238 Ala. 206, 189 So. 751, 757, "We cannot and should not evade. responsibility, letting it rest with the trial court. When convinced that he has erred, not so much in his finding of facts, as in the application of sound principles of law in such cases, we must so hold." In keeping with the view which we have expressed, the decree of the lower court is affirmed with respect to its judgment for $750, except that the court is authorized to make such further orders with respect to the fund as it may deem best for the support and maintenance of the minor children with consequent reduction in the judgment, and is reversed and rendered so as to grant to Beatrice Weems a divorce from John S. Weems on the ground of cruelty and also to grant to her the custody and control of the three minor children Billy Weems, Bobby Weems and Jimmy Weems, the father to have such right of reasonable visitation as the court may direct. Both Beatrice Weems and John S. Weems are permitted to marry again. Acts 1943, p. 569. The cause is remanded to the lower court so that such orders may be made and such process issued as may be necessary to make effective the decree here made.

Affirmed in part and in part reversed, rendered and remanded.

FOSTER, LAWSON and SIMPSON, JJ., concur.