179 So.2d 737

Clara **CALHOUN**

v.

Homer **CALHOUN.**

**5 Div. 794.**

Supreme Court of Alabama.

Nov. 4, 1965.

Russell, Raymon & Russell, Tuskegee, for appellee.

Fred D. Gray, Montgomery, for appellant.

LIVINGSTON, Chief Justice.

This appeal by the wife from a decree of the Circuit Court of Macon County, in Equity, challenges as error the action of the trial court in (1) granting a divorce a vinculo matrimonii to her husband; (2) denying a divorce a vinculo matrimonii to her; and (3) awarding custody of the parties' four minor children (of female

sex) to the father. Application is here made for an attorney's fee for representing appellant on this appeal.

The trial court stated that the testimony was being taken orally pursuant to Act No. 101, General Acts 1943, p. 105. We will consider only such evidence, as did the trial court, that is relevant, material, competent and legal.

It appears from the evidence, the text of which we have carefully read, that the parties to the divorce and custodial proceedings, both of whom are mature in age, were married in August, 1943 while the complainant was in the armed services, and have actually resided in Tuskegee since January, 1946.

When the evidence in this cause was taken on January 13, 1964, the youngest daughter was 12 years of age, the next 14, the third 15, and the oldest 18 years of age. Only two of these daughters, the one 14 and the other 15, testified in the trial of this cause. Each expressed a preference to live with her mother should a divorce be granted.

The evidence discloses bickering, strife, verbal bouts and heated arguments between the spouses from time to time for a period of several years before the divorce proceedings were instituted on November 9, 1962. However, the evidence notes only three instances when the wife was charged by the husband with statutory cruelty, neither of which resulted in a battery, but only threats of bodily injury or harm. All three acts involved brandishing a butcher knife by the wife in the room with appellee.

The first brandish of a butcher knife, complainant testified, occurred during the latter part of September or the first of October, 1956, when, during an argument, appellant (the wife) "jumped up and went to the drawer where knives and forks are kept. * * * she grabbed a long butcher knife like this (indicating) and she drew this butcher knife back at me." She did not cut appellee, but put the knife up.

Again, on June 26, 1958, appellant got a knife after appellee. The argument was over money. Appellee yanked the knife from her hand.

On Sunday, October 15, 1962, appellee testified that when he undertook to discipline one of his daughters whom he was tutoring at the time, appellant drew a knife on him again. The daughter intervened and took the knife from her mother. This was when he decided to seek legal counsel and file for divorce.

Appellee further testified that after the second gesture with a knife in 1958, following a futile effort on the part of a minister of the gospel to promote a reconciliation, he began to live in a separate room from his wife, but under the same roof and in their home.

While our statute, Sec. 22, Title 34, Code of Alabama 1940, as amended (Recompiled Code of 1958), provides that either party to the marriage may obtain a divorce when the other has committed actual violence on his or her person, attended with danger to life or health, it goes further and provides for divorce by either "when from his or her conduct there is reasonable apprehension of such violence."

While the alleged conduct of appellant with a knife in her hand in 1956 and 1958 is not sufficient upon which to predicate a divorce, due to condonation by appellee, a renewal of the complaint revives the right of the condoning party to insist upon the former offense. Weems v. Weems, 255 Ala. 210, 50 So.2d 428(2).

But does the fact that the husband here has lived under the same roof (in separate rooms) since the second exhibition of a butcher knife in 1958 soften the impact occasioned by the alleged conduct of the wife on the three occasions when she allegedly brandished the butcher knife, and on one or more of the occasions threatened to use it on the anatomy of her husband?

In Campbell v. Campbell, 252 Ala. 487, 41 So.2d 185, where it appears that the wife

lived with the husband after he allegedly threatened to drown her in order to command her obedience to his request to sign a deed, there was only one threat (denied by the husband). This Court said:

"[7] Except for the one threat outlined in the above testimony of complainant, and denied in its entirety by respondent, the record fails to disclose conduct on the part of the husband from which danger to complainant's life or health could be reasonably apprehended. This one incident, weighted by the denial of the husband, and the fact that the wife remained in his home, sleeping in the same bed with him for nearly two months without complaining to his or her people, does not meet the requirements of our statute, as construed by our cases. In so holding, we are not unmindful of the testimony of the wife as to other reprehensible conduct of the husband, not amounting to cruelty, but which conduct was also denied by the husband."

There are other cases cited by appellant wherein this court has held that the conduct of the husband was not sufficient to create in the mind of complainant a "reasonable apprehension" of violence on the part of the complaining party, attended by either danger to his or her life or health. Wood v. Wood, 80 Ala. 254; Morrison v. Morrison, 165 Ala. 191, 51 So. 743; Bailey v. Bailey, 237 Ala. 525, 187 So. 453; Hammon v. Hammon, 254 Ala. 287, 48 So.2d 202.

We have read each of the above cases and we do not find that the facts or evidence in either case parallel the case at bar. It is true here that the husband continued to live under the same roof with his wife, came in contact with her, and thereby exposed himself to a renewal of the carving knife episodes. But his parental obligation to his four daughters justified such continued habitation; also he had no other shelter of his own in which to seek retreat. The evidence tends to show that appellee is ardently devoted to the welfare and education of his daughters, and that he has a limited income to be used for these admirable purposes. He is to be commended rather than censured for his devotion to his daughters to the extent that he was willing to stay and expose himself to the further tirades of his wife.

When temperaments of appellant and appellee clashed or flared up, the impulse of the wife was to settle the argument by brandishing a butcher knife in the presence and face of appellee. Emotional impulses of this character could culminate in the actual use of the weapon and an anatomical carving with actual danger to the victim's life or health; certainly, such threatened use is sufficient to create in the mind of the threatened party a reasonable apprehension of violence.

While we have stated the tendency of appellee's evidence in support of his allegations of cruelty on the part of his wife, we have not ignored the tendency of appellant's evidence which refutes much of this accusative evidence. This court has held in many decisions that where the trial court heard and saw the witnesses in open court and his conclusion is that the wife was entitled to a divorce, we will not disturb the decree on a question of fact unless the finding of the court is clearly and palpably wrong. George v. George, 255 Ala. 190, 50 So.2d 744(6). We will not disturb the decree of the trial court that appellant was guilty of cruelty as alleged in the complaint.

Appellant complains here that the trial court erred in dismissing her cross bill that charged appellee with voluntary abandonment, which entitled her to a divorce, but if not, then, his conduct in abandoning her was recriminatory with the effect of defeating his petition for a divorce. With this contention, we cannot agree.

We have held that voluntary abandonment by the wife of the husband is not shown to exist when the " 'conduct on her part which he contends was an abandonment of him by her was moving into another

bedroom in the home · * · * *; which she continued to occupy and the refusal of sexual relations from that time until the present.'" Gross v. Gross, 265 Ala. 58, 89 So.2d 737(1, 2), quoting from Caine v. Caine, 262 Ala. 454, 79 So.2d 546, 548. "There was no living separate and apart which is an element of voluntary abandonment—there was no final separation until he moved out of the home." Caine v. Caine, supra. Section 20, Title 34, Code 1940, as amended. See Recompiled Code of 1958.

Since the evidence of both parties unequivocably shows that appellee never did move out of the house, but continued to occupy a separate room from his wife, there was no voluntary abandonment on the part of the husband.

 A very serious issue here is that part of the decree which awards the care, custody and control of the four female minor children to the father, with the right on the part of the mother to have said children visit with her in her home at reasonable times, so long as said visits do not interfere with the schooling of said minor children.

We take cognizance of many decisions of this court that in determining custodial award of minors the best interest and welfare of the minor is of paramount consideration and of supreme concern. Hougesen v. Hougesen, 271 Ala. 452, 124 So.2d 438 (5, 6).

We have also held that considering the age of children, their wishes as to their custody are entitled to much weight. Weems v. Weems, 255 Ala. 210, 50 So.2d 428(5). Also cited in this case are Wright v. Price, 226 Ala. 591, 147 So. 886; Chandler v. Whatley, 238 Ala. 206, 189 So.2d 751; Hill v. Gay, 252 Ala. 61, 39 So.2d 384.

The decree of the trial court sustains the contention of appellee that his wife was guilty of legal cruelty as charged in the complaint. The granting of a divorce to the husband on the ground of cruelty is a circumstance to be considered in awarding the custody of the children to the husband.

George v. George, 255 Ala. 190, 50 So.2d 744 (6), citing Hawkins v. Hawkins, 219 Ala. 31, 121 So. 92; Gayle v. Gayle, 220 Ala. 400, 125 So. 638(2). Granting a divorce against the wife for cruelty indicates, prima facie, her greater fault in this regard. Gayle v. Gayle, supra, (2). One of the pertinent inquiries in cases involving controversies between parents over the custody of children is which party was at fault in terminating the marriage relation. Vinson v. Vinson, 263 Ala. 635, 83 So.2d 215 (5).

The evidence adduced before the trial court clearly supports appellee's contention that he is very devoted to his children, ages 18, 15, 14 and 12, when the divorce proceedings were heard and the divorce decree entered. Only two of the minors, Janett, age 14, and Joyce, age 15, testified in the case. As we have stated, each of these two expressed a desire to live with their mother. It appears that the father is very ambitious for his children to get an education, and to that end, he has spent much time and thought in tutoring them in their school studies. He regularly takes them to church and Sunday School, and also on shopping tours for their personal needs. He has established a reasonable sum for their college education. He has a regular job from which he takes home, after tax deductions and payments on bonds for the education of his children, the sum of $139.03. He takes this amount home every two weeks. Several witnesses testified as to his good character. But there was one witness who testified by insinuation that the father approached him once to have a homosexual relationship. Evidently, the trial court did not put much faith in this testimony.

But considering the general welfare of the children, a paramount and supreme issue, their education and religious admonition in which the father seems deeply interested, we cannot say that the trial judge was wrong in his award of custody to the father. The latter saves his money, owes only $800.00 on a $5,800.00 home, and is providing for the children and their educa-

tion. Should he be deprived of their custody, he might lose that direct and zealous interest that he now manifests with respect to their general welfare.

In view of all the evidence, which we have carefully considered in our attempt to review the factual and legal angles presented in this appeal, we are unwilling to disturb the decree in granting the divorce and in awarding custody of the children to the father. The cross bill of appellant was properly dismissed.

We are also unwilling to grant appellant's motion here to require appellee to pay her an amount to compensate her attorney for representing her on this appeal. Appellee has a heavy financial burden to support, maintain and educate his four children. Appellant has a net income from teaching school that equals or slightly exceeds that of appellee. Appellant is not burdened with any of the responsibilities for the support and education of her children. She will be free to take care of her expenses incurred in taking this appeal. It is true she owes some money, but by frugal economy, she will in due course liquidate these debts and her expenses of this appeal.

The decree of the trial court is affirmed.

LAWSON, GOODWYN and COLEMAN, JJ., concur.