WILLIAM HENRY DUPONT, Defendant Below, Respondent Below, Appellant, v. DEBORAH ELDREDGE DUPONT, Plaintiff Below, Petitioner Below, Appellee.

*(January* 27, 1966)

WOLCOTT, C. J., CAREY, J., and SHORT, Vice Chancellor, sitting.

*James L. Latchum* and *Charles S. Crompton, Jr.,* of Berl, Potter & Anderson, for William Henry duPont.

*Laurence H. Eldredge,* Philadelphia, Pa., and *S. Samuel Arsht* and *Richard L. Sutton* of Morris, Nichols, Arsht & Tunnell, for Deborah Eldredge duPont.

Supreme Court of the State of Delaware, No. 100, 1965.

WOLCOTT, Chief Justice.

This is an appeal by the defendant, William Henry duPont, hereafter "father" from a final order entered in consolidated proceedings in the Superior Court. The plaintiff, Deborah Eldredge duPont, hereafter "mother," former wife of the defendant, filed a petition on September 7, 1965, seeking to have the father adjudged in contempt in violation of the final decree of October 20, 1961 divorcing the parties and purporting to award custody of the parties' children to the mother. On September 10, 1965 the mother filed a separate petition for a writ of *habeas corpus* for the purpose of regaining custody of the parties' two older children, then living with the father.

The Superior Court denied motions to dismiss both petitions on the ground of lack of jurisdiction of the subject matter, and consolidated both causes for trail. After trial, on November 12, 1965, a final judgment was entered adjudging the father in contempt of court, imposing sanctions upon him for contempt, and ordering him to deliver the parties's two older children to the custody of the mother within four days. This appeal followed and, on application, a stay pending final determination was granted, conditioned on accelerated briefing and argument.

We take up first that portion of the final judgment adjudging the father to be in contempt and imposing sanctions upon him.

The father was held in contempt, and costs and the payment of the mother's counsel fees were imposed as sanctions for that contempt. The father argues that the order adjudging him in contempt is a nullity because of lack of jurisdiction in the court.

The matter arises thus: In July, 1961, the mother commenced divorce proceedings against the father, alleging desertion. The father

appeared in the divorce action but made no contest. The action culminated in a decree *nisi.* Prior thereto, in March, 1961, the parties had entered into a separation agreement which, *inter alia,* provided for support of the mother and the maintenance of their three children. By the agreement, the father agreed that the mother should have sole custody of the children. Until February, 1965 the parties' three children lived with the mother in Pennsylvania.

In October, 1961, the decree *nisi* became final. Shortly thereafter, the mother requested the father to stipulate that the final decree be revised *nunc pro tunc* so as to make it approve and incorporate by reference the separation agreement. The final decree was so revised by approved stipulation.

In February, 1965, the mother was admitted to a mental hospital for a condition which proved to be temporary since she was discharged as cured on March 10, 1965. On February 20, at the request of the mother's father, the father took custody of the two youngest children and brought them from Pennsylvania to his home in Delaware. The oldest daughter became a boarding student at the school she had been attending but came to her father's home on weekend visits. In June, 1965, the youngest daughter, at her own request, was returned to the custody of the mother in Pennsylvania. The father has retained custody of the two older children despite requests by the mother for their return. As a matter of fact, since June, 1965, the father and mother have been engaged in litigation involving the custody and maintenance of the two oldest children.

In September, 1965, the mother petitioned the Superior Court that the father be held in contempt of court by reason of the retention of custody by him of the two children in violation of the final decree of divorce which had incorporated by reference the separation agreement agreeing that the mother should have sole custody of the children.

The Superior Court held the father in contempt for willful violation of the final divorce decree. The Superior Court held it had jurisdiction to award custody of children in a final decree of divorce

and to hold in contempt a party who willfully violated that award. The rationale for the decision was that the Delaware Constitution establishes one Superior Court as a state-wide court, and that, therefore, 15 *Del. C.,* Sec. 1510, which conferred jurisdiction upon the Superior Court to award custody of children in a divorce proceeding, was not legally amended in 1958 by 51 Laws, Ch. 29 purporting to eliminate that jurisdiction of the Superior Court sitting in New Castle County. While it is not expressly so stated, it seems apparent that implicitly it was held that 51 Laws, Ch. 29, was unconstitutional.

We disagree with the Superior Court in this respect. The jurisdiction of the Superior Court over divorce and annulment depends solely upon statute and not upon any provision of the Constitution. *Potter v. Potter,* 9 W.W.Harr. 489, 2 A.2d 93; *Brown v. Brown,* 3 Terry 157, 29 A.2d 149. This being so, the General Assembly is at liberty to confer jurisdiction over divorce in such manner as it may desire. This is made plain by Article 4, Sec. 1 of the Constitution which authorizes the General Assembly to create such statutory courts as it may desire.

In 1907, therefore, when the General Assembly recodified divorce and annulment law, it had a free hand. It was not required to confer such jurisdiction in the Superior Court. By 24 Laws, Ch. 211, however, it did confer such jurisdiction upon the Superior Court sitting in any of the counties of the state. This act contained no provision to authorize the Superior Court in a divorce action to award custody of children. In 1909 this was remedied by 25 Laws, Ch. 214, providing that the Superior Court "within any of the Counties of the State" in a divorce action could provide for custody of children. This act later appears as 15 *Del. C.,* Sec. 1510.

In 1958, the General Assembly by 51 Laws, Ch. 329, amended 15 *Del. C.,* Sec. 1510, by providing that only in Kent and Sussex Counties could the Superior Court award custody of children in divorce proceedings. The effect was to eliminate that power of the Superior Court sitting in New Castle County. The reason, apparently, was that jurisdiction over custody of children had been conferred upon the Family Court of New Castle County by 10 *Del. C.,* Sec. 952. There was

at that time no similar court in Kent and Sussex Counties.

The Superior Court relied upon Article 4, Sec. 7 of the Constitution, *Del. C.* Ann., when it held that this power could not partially be taken from it in New Castle County. Article 4, Sec. 7 provides that: "The Superior Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law and all other the jurisdiction and powers vested by the laws of this state in the formerly existing Superior Court; * * *." By Article 4, Sec. 17, the General Assembly is empowered to repeal or alter any "Act of the General Assembly giving jurisdiction" to the Superior Court.

We think, reading the two sections together, it is clear that the General Assembly is prohibited from repealing or altering the common law civil jurisdiction of the Superior Court, but is authorized to change or alter the statutory jurisdiction of that Court at will. Indeed, this Court has so held with respect to the jurisdiction of the Court of Chancery, *DuPont v. DuPont,* 32 Del. Ch. 413, 85 A.2d 724. This decision, by analogy, is pertinent in the case at bar. This is made clear by the *dictum* of Justice Tunnell in his dissent in that case.

We are concerned in this case with an Act of Assembly which purports to take away with respect to one county a statutorily conferred power which had theretofore with respect to that county been conferred upon the Family Court. We have no doubt that Article 4, Sec. 17 authorizes the General Assembly to do precisely this. It was dealing with an Act of Assembly conferring jurisdiction and not with the constitutionally solidified common law jurisdiction of the Superior Court. It follows therefore that the Superior Court had no jurisdiction in the divorce action between these parties to enter an order awarding custody of the children to either. Therefore, the father could not have been in contempt since the custody provision in the order was a nullity. *Mayer v. Mayer,* 36 Del. Ch. 457, 132 A.2d 617. The approval and incorporation by reference of the separation agreement accordingly served no legal purpose since parties may not confer jurisdiction over subject matter upon a court by consent. Annotation, 154 A.L.R. 445.

As an alternative reason for the decision, the Superior Court held that it was immaterial whether or not the Superior Court of New Castle County had jurisdiction in a divorce proceeding to enter an order as to custody of children, because it would admittedly have had jurisdiction to enter such an order in a *habeas corpus* proceeding at the time of the divorce decree. Accordingly, it was held the father was still guilty of contempt because the order actually entered was valid as an equivalent of an order of custody entered in a *habeas corpus* proceeding.

At the time of the divorce decree, the father was a resident of Delaware and the mother was a resident of Pennsylvania. All three children at the time were residents of Pennsylvania in the home of the mother. It is obvious that the Superior Court could not have obtained personal jurisdiction over the mother. The fact of her presence in Delaware in connection with the divorce action did not make her subject to service of process in Delaware. Woolley on Delaware Practice, Sec. 122. Nor could jurisdiction over the persons of the children have been obtained for they were not physically present in Delaware.

It follows that the father could not have instituted a *habeas corpus* proceeding in the Superior Court to obtain custody of the children. Nor could the mother have instituted such a proceeding for she at that time had the children in custody.

We think, therefore, that under either alternative, there was no valid order in existence of which the father could have been adjudged in contempt. This conclusion makes it unnecessary for us to consider whether or not his conduct was in fact contumacius.

We now take up that portion of the order entered in the mother's *habeas corpus* proceeding directing the father to deliver custody of the two oldest children to the mother.

An appeal from a decision of the Superior Court sitting without a jury is an appeal upon both the law and the facts. We have the duty, not only to review the evidence in search of factual

support for the findings below, but also for the purpose of testing the propriety of those findings. We act with restraint but when it is clear that justice requires it, we have the duty of making our own findings upon the evidence and setting aside clearly erroneous findings. Particularly is this so when the findings depend upon inferences and deductions from other facts. Delaware Racing Association, Application of, Del., 213 A.2d 203; *Nelson v. Murray,* 211 A.2d 842; *Nardo v. Nardo,* Del., 209 A.2d 905.

In the award of custody of children the paramount matter to be considered is the welfare of the children involved. This takes precedence over the desires of the parents who are contesting with each other for such custody. Their legitimate interests and desires may not be ignored, but at the same time they are not controlling. The ultimate test of the propriety of an award of custody of children is whether or not it provides for the best welfare of the children with as little uncertainty as possible. In Re Two Minor Children, 3 Storey 565, 173 A.2d 876.

The Superior Court found that the father had failed to establish that the mother was an unfit person to be awarded custody of these children. We agree that there was no such showing, but we think the father did not make any serious contention in this respect. On the contrary, his acquiescence in the return of the youngest child to the mother's custody is a concession that she is a fit person, as is his testimony that he has no objection to returning the two oldest children provided they want to be returned to live with her. Similarly, we think, the mother concedes that the father is a fit person to have custody. This is implicit in her testimony to the effect that she can understand that the son might want to live with his father rather than with her, but that if such is to be, she should have liberal rights of visitation. We think there is no real issue as to the relative fitness of either party to have custody of the children.

Consequently, we think the finding of the trial court that the father failed to prove the unfitness of the mother is immaterial, particularly in the light of the governing rule that the welfare of the

children is the prime consideration.

We think the characterization by the court below of the father as an arrogant individual who considers himself above the law and at liberty to flout his legal obligations is not supported by this record. We think a fair appraisal of the father's position in this unfortunate controversy is that he is not unwilling to have the mother have custody of the children, but that he is resisting such return because he is unwilling to force them to return to her custody in the face of their opposition to so doing. We are of the opinion that this position is not unnatural and does not rise to arrogance and flouting of the law.

The Superior Court held that the preference of minor children to be in the custody of one parent or the other is at most of minor consideration in making a determination of an award of custody. As a matter of fact, their preferences were completely ignored by the Court. We think this was error for we believe the law to be that if a child is of sufficient maturity to form an intelligent opinion upon the subject, there is no justification for that opinion to be wholly ignored. *Cook v. Cook,* 77 U.S. App. D.C. 388, 135 F.2d 945; *Dunham v. Dunham,* 97 Conn. 440, 117 A. 504; *Parks v. Parks,* 275 Ala. 613, 157 So.2d 212. The preference of a child for one parent or the other is, of course, not necessarily controlling on the Court because it must always yield to the paramount consideration of what is best for the child, but, nevertheless, it may not be ignored. *Weems v. Weems,* 255 Ala. 210, 50 So.2d 428; *Vilas v. Vilas,* 184 Ark. 352, 42 S.W.2d 379. Indeed, if other considerations are equal, the desire of the child may be decisive. 39 Am. Jur., Parent and Child, Sec. 21. The question to be determined is whether or not the child has reached an age of sufficient discretion to form an intelligent preference, and whether or not the preference is expressed because of some temporary dissatisfaction or passing whim. 2 Nelson on Divorce and Annulment (2nd Ed.), Sec. 15.19.

The oldest daughter testified emphatically that she did not want to return to live with her mother but desired to remain in her father's home. She in fact had expressed this desire some months before

the events which led to her removal to her father's home. The Superior Court ignored her preference, characterizing it as having been inspired by the father. We think, however, that there is nothing in this record to support the finding that the father influenced her testimony.

The daughter actually testified in this trial in the presence of her mother and was cross-examined by her maternal grandfather, counsel for her mother. She re-stated her desire to remain with her father and her opposition to returning to the custody of her mother. Irrespective, therefore, of whether or not the details of her testimony were believed by the Court, as apparently they were not, the fact remains that for some reason good and sufficient to her, she desires to remain with her father.

We ask what the effect of a forced return to her mother's home would have upon this 16-year-old girl? What sort of relationship would she have with the mother whom she has spurned in open court by testimony given under oath in her mother's presence? While this is an unfortunate situation, it is nevertheless a fact which, it seems to us, is of particular importance in determining how the welfare of this girl will be best served by an award of custody.

If the Court had doubt as to the *bona fide* desire of this girl, it seems to us it would have been a proper act of discretion on its part to have ordered a psychiatric examination to determine how deep-seated was her desire not to be returned to her mother. This was not done, nor, as a matter of fact, is there any testimony whatsoever concerning a psychiatric or psychological examination of either of these children in order to determine the effect on them of the granting of custody to either parent.

We think, therefore, that an error of law was committed by the trial judge in giving no weight at all to the express desire of the 16-year-old daughter to remain with her father. Since other considerations are equal, we think that her preference to remain with her father should have been followed. The order awarding custody of the daughter to the mother must therefore be reversed and the

matter remanded with instructions to award custody to the father, with liberal rights of visitation to the mother.

With respect to the son Larry, aged 11, the father's counsel offered to produce him as a witness either in open court or for examination privately by the judge in chambers. It appears in the record through hearsay that the son, too, had expressed a desire to remain with his father and not to be returned to the custody of his mother.

We think the son should have been examined as to his preference and that the failure or refusal of the Court to do so was error in law. The fact that his age was 11 years makes no difference, provided that he was sufficiently mature to form an intelligent opinion. Not only his preference but his maturity as well could have been inquired into by the Court. The failure to do so, despite his age, was error. *Kreutzer v. Kreutzer,* 226 Or. 158, 359 P.2d 536; 2 Nelson on Divorce and Annulment (2nd Ed.), Sec. 15.19.

The order awarding custody of the son to the mother must therefore be reversed and the matter remanded for further proceedings to determine whether or not the son was of sufficient maturity to form an intelligent opinion; whether or not he had in fact formed such an opinion, and, in the light of that investigation, what final decision as to his custody would be best for his future welfare.

On remand, if it appears desirable, some psychiatric examination of the son might be had in order to determine how deep-seated his desire to remain with his father is, and if that desire is not given effect, what result that will have upon his future welfare. It seems to us quite probable that if his desire not to be returned to the custody of his mother is strong and deep-rooted, an order to return to her custody might have a deep-seated and permanent effect on his future welfare.

In any event, this should be inquired into since we think it highly pertinent and important in the determination of final custody. Certainly, also, if the ultimate conclusion should be that the desire of

the son to stay with his father is given effect, then the mother should have very liberal rights of visitation. Indeed, as we read this record, the father has no objection to such visitation rights. In any event, whether he does or not, he can be compelled to acquiesce in them.

We note that since February, 1965, the oldest daughter has attended two different schools; the son has attended three, and the youngest daughter, two. We suppose frequent changes in schools not to be in their best interests and, certainly, this would be so if the change took place in the middle of a term. We suggest, therefore, the undesirability of forcing a mid-term change on the son by a change in his present custody. Any such change may well await the termination of the school year.

We reluctantly have concluded that, perhaps unconsciously, the final decision of the Court below was colored by his conclusion that the father was a contumacious violator of the decree of Court. We have held he was not and, since we think that erroneous finding was largely responsible for the Court's ultimate decision, we have no choice but to reverse it. When we are convinced that the final award of custody of children is erroneous, we have not hesitated in the past to reverse it and substitute our own conclusion. See *Nelson v. Murray*, Del., 211 A.2d 842.

The judgment below will therefore be reversed and the cause remanded with directions to strike the order finding the father in contempt of court and the imposition of sanctions upon him by reason of that contempt; with directions to award custody of the oldest daughter to her father; and with directions to hold a further hearing, if necessary, and, in particular, to examine the son to determine whether or not it is in fact his preference to remain with his father and, if so, how deep-seated and real that preference is, and, in the light of the findings to be made, to make a final award of custody to either parent. With respect to both the daughter and the son, liberal rights of visitation should be allowed to the parent not having custody.