Following an ore tenus proceeding, the trial court entered a judgment of divorce on account of the adultery of Charles Corley Rowe (husband), which ordered that the husband pay $2,000 per month alimony to Betty H. Rowe (wife); ordered that the marital home in Jacksonville, Alabama, which was owned solely by the husband before the marriage, be sold and that the husband pay the monthly mortgage payments of $1,200 and the wife provide for maintenance of the home until it is sold; awarded the wife all interest in real estate owned by her in Jacksonville, Alabama; divided the personal property; awarded the wife the remainder of $45,000 borrowed by her against the marital home (approximately $14,000), $45,000 in funds with a credit union, and other funds valued at approximately $10,000; and awarded the husband all other stocks, bonds, certificates of deposit, or other funds on deposit. The husband appeals. We reverse and remand.
At the outset, we note that, after an ore tenus proceeding, the trial court's judgment is presumed correct and may be set aside only when it is found to be plainly and palpably wrong.Euler v. Euler, 515 So.2d 710 (Ala.Civ.App. 1987); Lucero v.Lucero, 485 So.2d 347 (Ala.Civ.App. 1986).
The record reveals that the parties were married on December 31, 1977, and that this was the second marriage for both. Each party had two children from the previous marriage. There were no children born of this marriage.
At the time of the marriage, the wife was a high school English teacher with a bachelor's degree in English and a master's degree in counseling. She resigned her teaching job to take care of the children. The wife is 61 years old, has not worked during the marriage, and has a lapsed teaching certificate.
The husband has worked for Jacksonville State University as business manager. During part of that time he was contracted out to the State of Alabama. He is presently budget officer for the State of Alabama and earns $88,000 a year. The husband has moved to Montgomery because of his work, and his eighteen-year-old daughter lives with him. He rents a house in Montgomery from his mother, which she purchased for $58,000 shortly after the husband gave her $49,000.
The wife testified that she was not invited to move to Montgomery with the husband, but felt that she was being left in Jacksonville and had no alternative to filing for divorce. The wife drew $45,000 from an equity line-of-credit that was established *Page 586 
against the marital home and used all but $14,000 for expenses.
The husband first contends that the trial court is due to be reversed in that there is no evidence that the husband was cohabiting with a member of the opposite sex. He argues that § 13A-13-2(a), Ala. Code 1975, a section of the criminal code which was enacted in 1977, added a new requirement of cohabitation as a necessary element in adultery in a criminal case which should be extended to civil law. We disagree.
Section 13A-13-2(a) states that "[a] person commits adultery when he engages in sexual intercourse with another person who is not his spouse and lives in cohabitation with that otherperson when he or that other person is married." (Emphasis supplied.) Prior to 1977, § 13-8-1, Ala. Code 1975, defined adultery in criminal cases and provided that "[i]f any man and woman live together in adultery or fornication. . . ." (Emphasis supplied.) The commentary to § 13A-13-2 states, in pertinent part, as follows:
 "Section 13A-13-2 is a substantial codification of Alabama law. The existing statute does not cover a transitory adulterous act, but requires the offender to be 'living in adultery,' which has been interpreted by the courts to mean that the conduct must be open and notorious, and the meetings must be continuous or there must be an agreement to have regular meetings. The section's use of the term 'lives in cohabitation with' indicates an intention that existing case law interpretation be carried forward."
(Citations omitted.)
Adultery is defined as "[v]oluntary sexual intercourse of a married person with a person other than the offender's husband or wife." Black's Law Dictionary 47 (5th ed. 1979). See also
27A C.J.S. Divorce § 60 (1986). Although we have not found any Alabama cases which specifically define adultery, the cases have referred to "extramarital affairs," Hardin v. Hardin,541 So.2d 563, 564 (Ala.Civ.App. 1989), other women being intimate with the husband, Duke v. Duke, 457 So.2d 432
(Ala.Civ.App. 1984), and committing "acts of adultery with diverse persons," Rambo v. Rambo, 245 Ala. 98, 99, 16 So.2d 4
(1943), as adultery.
We find that the 1977 change in the criminal code was not a substantive change in the proof necessary to show adultery in criminal cases but merely codified existing Alabama law. We further find that proving adultery in a divorce case does not require proof of cohabitation with a member of the opposite sex as required in criminal cases.
The husband next contends that the trial court erred in its judgment of divorce, because, he says, the evidence was insufficient to prove adultery. To support his contention, he argues that the depositions of two investigators should not have been considered by the trial court and should not be considered by this court because, he claims, the trial court did not rule on the offer of proof and the depositions were never marked as exhibits. He also argues that, even considering the depositions, the evidence is not sufficient to prove a charge of adultery.
The wife testified that she first realized her marriage was in trouble during the summer of 1987 when the husband announced that he wanted to separate. A few days later he removed his wedding ring, complaining of a swollen knuckle. Later that year there began to be a series of calls, allegedly from a state senator being placed by his secretary. When the wife questioned the husband about these, he gave her the name of the secretary, and she became suspicious. Then there began to be one-ring phone calls, which the wife believed were "signal calls." She listened in on the extension phone after one of the "signal calls" and heard the husband talking to someone with a voice that sounded like the secretary. The husband told the woman on the phone that he could not talk then, and she asked him to call her in the morning.
In reaction to her suspicions, the wife hired investigators. The deposition of one of the investigators indicates that he *Page 587 
saw the husband outside the home of the secretary three or four times over a two-year period. The only time that this investigator saw the husband in the house there were three people there, and one of them appeared to be a child. One of the investigators indicated that the secretary had a teenage child living with her in the home. Although the latter investigator stated that he had checked the house "thirty or forty" times over a two-year period and had seen the husband's car at the secretary's house "numerous times," he had no record of this with him and was unable to give a specific number of times or dates. The other investigator said that he saw the husband at the house only one time, when the two investigators were together. The testimony of private detectives cannot always be accepted at face value, and authorities agree that it is to be weighed with great caution. Pitchford v. Pitchford,222 Ala. 612, 133 So. 718 (1931).
The act of adultery may be proven by circumstantial evidence, but more than a mere suspicion must be created. In addition, the circumstances created must be "such as would lead the guarded discretion of a reasonable and just man to conclude that the act of adultery has been committed," Billington v.Billington, 531 So.2d 924 (Ala.Civ.App. 1988), and "to the conclusion of adultery as a necessary inference." Boldon v.Boldon, 354 So.2d 275, 276 (Ala.Civ.App. 1978) (quoted with approval in Maddox v. Maddox, 553 So.2d 611, 612
(Ala.Civ.App. 1989)). Clearly, a suspicion of adultery has been created, but we find that the circumstances in the present case would not "lead the guarded discretion of a reasonable and just man to conclude that the act of adultery has been committed,"Billington, 531 So.2d 924, or to the necessary conclusion of adultery, Boldon, 354 So.2d 275.
Although the wife claimed in her complaint that the husband had committed adultery, she also stated a claim based on an alleged incompatibility and a complete breakdown of the marriage.
Based on the above, we find that it was error for the trial court to grant the divorce on the ground of adultery, but that there was sufficient evidence to support the claim of incompatibility and the complete breakdown of the marriage. Therefore, the trial court is instructed to grant the divorce based on incompatibility. Additionally, we find that the trial court obviously made the award of alimony and the property settlement under the fault theory of adultery, and, in view of a finding to the contrary, we instruct the court to set the alimony and property settlement without the grounds of adultery as a consideration.
This case is due to be reversed and remanded with instructions to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON and RUSSELL, JJ. concur.
INGRAM, P.J., concurs in the result only.