[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 986 
This is a divorce case.
On August 15, 1977 Mrs. Morgan filed a complaint against Dr. Morgan seeking divorce on the ground of incompatibility of temperament. Subsequently she amended the complaint to add adultery as a ground. Dr. Morgan filed an answer and cross-complaint based on incompatibility and irretrievable breakdown of the marriage. A hearing was held and on April 29, 1980 a final decree was rendered. Mrs. Morgan's new trial motion was overruled and she appealed to this court.
The decree appealed from divorced the parties for incompatibility, divided the real and personal property belonging to the parties, made Mrs. Morgan the owner of several insurance policies on the life of Dr. Morgan but required that she pay the premiums, awarded Mrs. Morgan $400,000, payable $40,000 per year for ten years as alimony in gross, required Dr. Morgan to pay all outstanding debts of the parties, awarded Mrs. Morgan $1,500 per month as periodic alimony, and required Dr. Morgan to pay Mrs. Morgan $30,500 for attorneys' fees.
The following pertinent facts appear in the record. Dr. and Mrs. Morgan were married in 1951. Dr. Morgan is forty-nine years old and Mrs. Morgan is forty-eight years old. They have four adult children.
At the present time Dr. Morgan has a general medical practice in Graysville, Alabama where he owns and operates Longview General Hospital, Inc., and Longview Pharmacy, Inc.
After the parties were married and while Dr. Morgan was attending medical school, Mrs. Morgan taught school to assist the family financially. She continued to assist Dr. Morgan in establishing the practice of medicine first in Mississippi and then in Graysville, Alabama by working in the office as a receptionist, bookkeeper and assistant in the examining room.
In 1964 Dr. and Mrs. Morgan, with the help of Mrs. Morgan's mother built a twenty-eight bed hospital. Mrs. Morgan was the administrator. In 1966 the hospital was enlarged to fifty beds and a pharmacy and medical clinic were included in the addition.
The hospital was operated by a corporation, the principal owners of which were Dr. and Mrs. Morgan. Mrs. Morgan owned all of the stock in the pharmacy corporation and operated it. During the time that Mrs. Morgan operated the pharmacy, she used the proceeds to purchase in the name of the corporation several parcels of land in the vicinity of the hospital.
In 1969 the parties built a house at a cost of about $175,000 on some thirty acres of land previously purchased and known as 1100 North Main Street. The parties had previously lived in a two-story house at 251 Main Street where Dr. Morgan used the downstairs as his medical offices.
The parties started having marital difficulties in 1971 culminating in a divorce in 1973. Prior to the divorce Mrs. Morgan dissolved the pharmacy corporation and conveyed the land previously acquired by the corporation to her and her mother. The 1973 divorce was set aside at the joint request of the parties and they resumed marital relations.
After the divorce was set aside Mrs. Morgan and her mother reconveyed the land previously owned by the pharmacy to Dr. and Mrs. Morgan jointly with right of survivorship.
In 1974 Dr. Morgan took over the operation of the pharmacy, formed a new corporation, and made himself sole owner.
Before the 1973 divorce Mrs. Morgan became the owner and beneficiary of $830,000 worth of life insurance on Dr. Morgan. Since 1973 Mrs. Morgan has been paying the yearly premium of $30,000 by borrowing from the cash value of the policies. She is currently paying $4,000 a year in interest on the total amount she has borrowed. *Page 987 
The evidence shows that Dr. Morgan's gross income for 1979 was between $265,000 and $415,000. Mrs. Morgan's income was $18,891 but it did not include $18,000 which had been given to her by Dr. Morgan.
The appraised values of the hospital and pharmacy plus the adjoining land, the residence at 1100 North Main Street, and the residence at 251 Main Street varied between $1,302,300 and $2,484,090.
The joint net worth of the parties at trial time was somewhat over $3,000,000.
Mrs. Morgan presently lives in a condominium; however, she says she would need about $5,000 per month to pay her living expenses if she were to move back to the homeplace at 1100 North Main Street.
There is evidence in the record that Dr. Morgan has had a longstanding sexual relationship with a former nurse. There is also evidence in the record that Mrs. Morgan has had a social relationship with a former accountant of the hospital whom Dr. Morgan fired.
Mrs. Morgan's first contention on appeal is that the trial court erred in limiting her discovery efforts. The question of inadequate discovery is raised by Mrs. Morgan's most recent attorney. The record reflects that extensive discovery was conducted by Mrs. Morgan's previous attorneys and, at the time Mrs. Morgan's present attorney entered the case, the standing master was instructed by the court to determine the extent of additional discovery that might be needed by Mrs. Morgan with the proviso that Dr. Morgan "not be required to produce or answer those things which have been previously produced or answered." Pursuant to this directive, additional discovery was allowed; however, Mrs. Morgan contends that access to certain information was denied her.
Rule 26, ARCP, permits discovery of relevant information not otherwise privileged; however, this same rule gives the trial court the authority to limit or restrict the discovery process. When the trial court acts to limit or restrict discovery, such action will be liberally and broadly construed and will not be reversed unless, from all the circumstances of the case, it appears that the discretion reposed in that court has been abused. Assured Investors Life Insurance Co. v. National UnionAssociates, Inc., Ala., 362 So.2d 228 (1978). We find no such abuse in the case at bar.
Mrs. Morgan next contends that the trial court erred in refusing to let a witness testify concerning the value of the land and hospital buildings plus and adjoining eight acres.
Mr. Larry Shipp, who was employed by Estes Health Care Center, was called to testify as an expert on the value of various types of health facilities. The trial court refused to let him testify.
Whether an expert witness is shown to be so qualified is addressed to the sound discretion of the trial court, and the court's ruling thereon will not be reversed unless it is shown that the exercise of such discretion has been so abused as to work injury to appellant's cause. Gregath v. Bates, Ala.Civ.App., 359 So.2d 404 (1978). Moreover, whether a witness has had an opportunity to form an opinion is likewise a preliminary question for the trial court and a ruling thereon will not be reversed except for substantial injury. State v.Self, 293 Ala. 541, 307 So.2d 11 (1975); Morris v. State,25 Ala. App. 494, 149 So.2d 359 (1933).
Mr. Shipp's qualifications for giving opinion testimony as to value of the health facilities consisted of six years employment as Director of Pharmacy Services for Estes Health Care Center. During this time he was involved in determining the values of eleven health care facilities acquired by Estes. Such involvement appeared to consist of financial analysis of the facilities from a revenue standpoint. Shipp did say that he had looked at Longview Hospital's financial statement. However there was no evidence that Mr. Shipp was familiar with the value of the property in the neighborhood of Longview Hospital.See Adler Co. v. Pruitt, 169 Ala. 213, 53 So. 315 (1910).
In view of the evidence adduced relating to Mr. Shipp's qualifications to give *Page 988 
an opinion as to the value of Longview Hospital and adjoining land, we cannot say that the trial court abused its discretion in refusing to let Mr. Shipp give his opinion as to the value of the facilities in question.
Another issue raised by Mrs. Morgan relates to the reception into evidence of a real estate appraiser's report where the appraiser testified in court.
Mr. Tommy Young, an MAI real estate appraiser in the company of Mr. Donald Sides, personally inspected the property at 251 Main Street, 1100 North Main Street, and hospital acreage and evaluated these properties. Mr. Young testified that he had inspected the properties, had used the various accepted methods in evaluating the properties, and had arrived at a value for each one of them. All of this was reduced to writing in a report signed by Mr. Young and Mr. Sides.
After Mr. Young had testified concerning his appraisal of the property in question, the written report was accepted into evidence over Mrs. Morgan's objection that Mr. Young's testimony was the best evidence.
Assuming but not deciding that the admission of Mr. Young's written appraisal report was error, we conclude that such error does not require a reversal of the judgment because it does not appear that the rights of Mrs. Morgan have been injuriously affected. Slay v. McKean Paint Hardware Store, Inc.,55 Ala. App. 487, 317 So.2d 326 (1975); Rule 45, ARAP and Rule 61, ARCP. It appears that the written appraisal report was a mere recapitulation of the oral testimony given by Mr. Young; therefore any error in the admission of the written report did not prejudice the rights of Mrs. Morgan.
Another issue raised by Mrs. Morgan concerns the refusal of the trial court to hear testimony of Dr. Morgan's misconduct prior to the 1973 divorce. She contends that the trial court committed reversible error by refusing to hear and consider evidence of misconduct committed by Dr. Morgan prior to the 1973 divorce.
The evidence that Mrs. Morgan attempted to introduce related to the sexual misconduct and physical cruelty of Dr. Morgan prior to 1973. The 1977 amended divorce complaint alleged adultery on the part of Dr. Morgan. The evidence in support of the last complaint for divorce reveals an episode of physical cruelty committed by Dr. Morgan on Mrs. Morgan and also evidence of sexual misconduct on the part of Dr. Morgan.
The remarks of the trial judge made at the time he ruled on the offer of proof of misconduct prior to 1973 indicates that the court considered the parties to have reconciled their differences and to have decided to live together as man and wife. Hence these past difficulties would not be considered by the court in determining the fault or non-fault of Dr. Morgan in bringing about the separation.
Renewal of conduct constituting grounds for divorce revives right of condoning party to insist upon former conduct. Calhounv. Calhoun, 278 Ala. 610, 179 So.2d 737 (1965).
Evidence that Dr. Morgan had physically abused Mrs. Morgan prior to the 1973 reconciliation and that he had been involved in sexual misconduct should have been received by the trial court, and its failure to do so was error. However, there was ample evidence of fault on the part of Dr. Morgan between the 1973 decree and the 1980 decree that was before the court; consequently, the disallowed evidence would have been cumulative at the most. Therefore we do not consider such error to be so prejudicial as to require a reversal of the trial court's decree. Slay v. McKean Paint Hardware Store, Inc.,supra; Rule 61, ARCP; Rule 45, ARAP.
Mrs. Morgan next contends that the trial court erred in awarding her an inequitable amount of the marriage property.
To help us assess the correctness of this aspect of the trial court's decree, we observe two well-known and often cited divorce case principles: the division of property need not be equal but it must be equitable, *Page 989 Thompson v. Thompson, Ala.Civ.App., 377 So.2d 141 (1979); and the division of property in a divorce case is within the sound discretion of the trial court and will not be reversed except for palpable abuse of that discretion. Kabaci v. Kabaci, Ala.Civ.App., 373 So.2d 1144 (1979).
While the value of the various assets of the parties was in sharp dispute, it appears from the briefs that the total value of their net estate was slightly in excess of $3,000,000. The division of this estate by the court resulted in Dr. Morgan receiving assets of about $2,300,000 and Mrs. Morgan receiving approximately $962,000. Mrs. Morgan thus receives roughly one-third of the parties' estate. We are not persuaded that the trial court abused its discretion in making such an award of the parties' property. Sides v. Sides, 284 Ala. 39,221 So.2d 677 (1969).
In conjunction with her argument that the trial court awarded her an inadequate amount of the parties' property, Mrs. Morgan submits that she should have been awarded as her separate estate five parcels of property purchased by Longview Hospital Apothecary, Inc. while she was the sole owner of the stock of that corporation.
The evidence reflects that these parcels were purchased when Mrs. Morgan was the owner of the stock of the pharmacy but it is also suggested that Dr. Morgan negotiated for these parcels of property and all Mrs. Morgan did was to sign the checks and that the pharmacy was in her sole name only because the attorney had recommended it to avoid a conflict with the ownership of the hospital. Notwithstanding these circumstances, it clearly appears from the record that Mrs. Morgan transferred title to these parcels of land to her and her mother when the corporation was dissolved, and then, after the reconciliation, she and her mother transferred the title to her and Dr. Morgan as joint tenants with right of survivorship.
The determination of what is and what is not the wife's separate estate is for the trial court. Foreman v. Foreman, Ala.Civ.App., 379 So.2d 89 (1980). And when the parties to a divorce action submit themselves to the jurisdiction of the court for the division of jointly owned property, the court has the authority to make such division as equity requires. Foremanv. Foreman, supra.
The jointly owned property was divided by the court and, as said above, we consider it to have been an equitable distribution.
Lastly, Mrs. Morgan argues that the trial court awarded an inadequate amount of periodic alimony and as a result the court committed reversible error.
The trial court awarded Mrs. Morgan $1,500 per month as periodic alimony, and she argues that based on the standard of living to which she had become accustomed during her former marriage and based on the misconduct of Dr. Morgan, a larger amount of periodic alimony should have been awarded to her.
Dr. Morgan replies that Mrs. Morgan testified that $5,000 a month would be sufficient for her needs and that the record shows that Mrs. Morgan's annual income will be $77,000.
The award of alimony in a divorce case is a matter within the discretion of the court and such a decision is to be made based on the peculiar facts of that case. Elsevier v. Elsevier, Ala.Civ.App., 355 So.2d 382 (1978). The court's discretion is to be exercised in light of various factors, such as the earning ability of the parties, future prospects, age health duration of the marriage, accustomed standard of living, source, value and type of property and the conduct of the parties as related to the marriage. Elsevier v. Elsevier,supra. And an award of alimony after an oral hearing is surrounded with a presumption of correctness and will not be set aside except for gross abuse of the court's discretion.Metcalf v. Metcalf, Ala.Civ.App., 340 So.2d 38 (1976).
After a careful consideration of the evidence in the light of the factors above enumerated, we are unable to say that the trial court's award of periodic alimony is *Page 990 
palpably wrong. Furthermore we consider such a conclusion to be supported by the fact that Mrs. Morgan's yearly income will be in excess of the amount she testified she would need for living expenses. See Harris v. Harris, 275 Ala. 329, 154 So.2d 748
(1963).
Mrs. Morgan argues that since she is required to pay the $30,000 per year premium on the $830,000 worth of insurance awarded to her, her yearly income will be reduced below the amount she needs for her living expenses and, therefore, the periodic alimony award is totally inadequate.
The testimony shows that Mrs. Morgan has been paying the premium since 1973 by borrowing against the policies and paying the interest on the amount she had borrowed. At the time of trial the interest amounted to $4,000 per year.
It is certain that the $4,000 interest payment does not reduce Mrs. Morgan's yearly income below that to which she testified she would need to meet her living expenses.
We would further note, however, that a periodic alimony award is subject of modification depending on the existence of changed circumstances.
For the reasons above noted the judgment of the trial court is affirmed.
Mrs. Morgan's request for an attorney's fee on appeal is denied.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.